## Bayler *versus* The Commonwealth for use, &c.

*Conveyance of Estate in Expectancy.—Mortgage of Wife's expected Interest in her Father's Estate, for Debt of Husband, invalid.*

1. A married woman gave a mortgage to a creditor of her husband's, of "all the estate, right, title, and interest," to which she would be entitled in her father's estate, on his death, and also covenanted with her husband "to stand seised of said estate, right, title, and interest, to the use of the mortgagee and his heirs, and to make further assurances." The mortgage was given for the sole purpose of securing a prior debt of the husband's, and no consideration was received by her or given by the mortgagee. After the death of the father, the mortgagee claimed her share of the real estate. *Held*, that he was not a purchaser for value, and that the mortgage did not enable him to hold against her, the share of her father's lands, which descended to her at his death.

2. Where a deed does not undertake to convey an existing estate, and the subject of the grant is only an expectancy, the deed is executory only, and nothing more than a covenant for future conveyance; for the grant and the covenant contemplate the assurance of an estate which might possibly be thereafter acquired, either by descent or will, an assurance necessarily future, and inoperative at law.

3. Though a conveyance of an expectancy, as such, is impossible at law, yet it may be enforced in equity as an executory agreement to convey, if it be sustained by a sufficient consideration.

ERROR to the Common Pleas of *York county.*

This was a *scire facias* to November Term 1860, in the name of the Commonwealth, for the use of Lucinda Jay, wife of Charles E. Jay, against Henry Bayler, on a recognisance entered into by him in the Orphans' Court of said county, with surety as heir at law of Jacob Bayler, deceased, to pay to the other heirs of the decedent their respective shares out of a certain portion of the real estate late of deceased.

The case was this:—

On the 30th day of August 1855, on the application of Charles E. Jay, husband of Lucinda Jay, who was a daughter of Jacob Bayler, the Court of Common Pleas of York county issued a commission to inquire into the lunacy of Jacob Bayler, who was then confined in the State Lunatic Asylum at Harrisburg, under which it was found that he was a lunatic and had no lucid intervals, and that he was seised of certain real estate, and possessed of certain personal estate. The inquisition was reported to the Court of Common Pleas, and confirmed on the 9th day of November 1855.

Jacob Bayler remained in the same condition up to the time of his death, which took place on the 7th day of July 1857. Henry Bayler, who was a son of Jacob Bayler, was appointed committee of his father. On the 1st day of July 1857, Charles

E. Jay and his wife Lucinda executed a paper of that date, which they acknowledged on the 1st day of July 1857, by which —in consideration of one dollar, and for the purpose of securing to Henry Bayler the payment of Charles E. Jay's indebtedness to him, amounting to $1487, with interest from that date—they granted, bargained, and sold to Henry Bayler, his heirs and assigns, "all the estate, right, title, and interest, in law or equity, to which said Lucinda will become entitled on the death of her father, Jacob Bayler, of York, Pennsylvania, in his estate, real, personal, and mixed, by will, descent, or otherwise, &c." The conveyance contained the joint and several covenant of the grantors to stand seised of the estate granted, to the use of Henry Bayler, and for further assurances and conveyances of the same. The paper was acknowledged by Mrs. Jay and her husband—separately by her—and it was duly recorded on the 2d day of July 1857.

After the death of Jacob Bayler, proceedings in partition in the Orphans' Court were duly had in regard to his real estate, No. 1 of which was valued at $4600, and accepted by Henry Bayler, who entered into a recognisance, with surety, to pay to the widow her interest annually, and to the other heirs their shares of the amount of the valuation. The share of Mrs. Jay, after deducting expenses, was $1003.11, payable on the 6th day of November 1858, with interest from the 6th day of November 1857, when the recognisance was entered into, and the further sum of $501.55 at the widow's death. The widow died on the 11th day of June 1859. This suit was brought on the above-mentioned recognisance. The pleas were payment, payment with leave, and set-off.

On the trial, after the plaintiff had given in evidence the record of the recognisance in the Orphans' Court, and the date of the death of the widow, the defendant gave in evidence the whole record of the proceedings in lunacy, evidence that Jacob Bayler remained without lucid intervals until his death, that he died July 7th 1857, and then gave in evidence the conveyance above referred to.

The plaintiff thereupon offered to prove that so much of the certificate of the commissioner as alleges that Lucinda Jay was "separate and apart from her husband by me examined," is false and untrue, and that Henry Bayler knew it; that she was not examined separate and apart from her husband, but in the same room with her husband, and in his presence and hearing, and in the presence and hearing of said Henry Bayler, the grantee in said alleged mortgage, who was also present in the room; and that said acknowledgment is fraudulent as to her rights, in representing that she was examined separate from her

[Bayler *v.* Commonwealth.]

husband, when in truth and in fact she was not, and the grantee knew it.

This offer was objected to as incompetent to contradict the certificate of the commissioner, and because the only evidence admissible in contradiction of such certificate is evidence of fraud or imposition. The court admitted the evidence and sealed a bill of exceptions.

The court was requested by defendant to charge the jury :—

1. That a married woman can execute a valid mortgage of her lands, or of any interest in them, present or expectant, to secure the payment of her husband's debts.

2. That the certificate of the commissioner before whom the acknowledgment of the mortgage was taken, in the absence of any fraud or imposition, is *conclusive* as to the fact of *separate* acknowledgment, and the testimony of Mr. Shipley on this subject is to be disregarded.

3. That the words "grant, bargain, and sell," constitute an implied warranty under the Act of Assembly, and such a warranty as a married woman is bound by, as far as relates to the estate or interest conveyed; and if the acknowledgment is taken according to the provisions of the Act of Assembly, she is estopped from claiming against said deed, and the mortgage given in evidence, in this case, is a defence to the extent of its amount.

4. That a married woman, by deed of conveyance executed as required by the Acts of Assembly, may bind her interest in her lands by covenant to stand seised to the use of the grantee, and also by covenant for further assurance or conveyance, if required.

Under the instructions of the court below (FISHER, P. J.), there was a verdict and judgment in favour of the plaintiff for $1749.79. Whereupon the defendant sued out this writ, and assigned here as cause for reversal the following matters, viz. :—

1. The court erred in charging the jury, that Mrs. Jay could not make a mortgage which would encumber the real estate which she expected to inherit from her father at his death.

2. That she could not enter into a valid covenant to stand seised of the estate to the use of the mortgagee, or for further assurance of the premises to the grantee.

3. That the defendant could not set off the amount of the mortgage against the plaintiff's claim.

4. In admitting evidence to contradict the commissioner's certificate of the separate acknowledgment of the mortgage by Mrs. Jay, in the absence of proof, offer of proof, or even allegation of fraud or imposition.

5. In saying, in answer to the defendant's third point, that Mrs. Jay was not estopped from denying the implied warranty of the words "grant, bargain, and sell."

[Bayler *v.* Commonwealth.]

*E. Chapin* and *E. H. Weiser*, for plaintiff in error—Either it is settled law in this state that *expectancies* may be conveyed in the ordinary way, or that scarcely any cases of the kind have ever occurred. We find but one, McClure *v.* McClure, Phila. Rep. 117, where it is said, "there is nothing in the law to prevent the conveyance of a mere expectancy or possibility." This case is even stronger, because it is one of a conveyance of all the grantor's present and expectant interest in the real estate of Jacob Bayler, which in that case was of all the present and expectant interest in the estate of W. McClure, deceased. The expectancy was, in that case, more remote. See Smilie's Estate, 10 Harris 133; 2 P. Wms. 182; Becky *v.* Newland, Id. 191; Hobson *v.* Trevor, Wethered *v.* Wethered, 2 Eng. Ch. Rep.; 2 Simons 183; Harwood *v.* Tooke, Id. 193; Lyde *v.* Mynn, 8 Eng. Ch. Rep. 406; Trull *v.* Eastman, 3 Metcalf 121.

The words "grant, bargain, and sell," in this deed, under the Act of May 28th 1817, create an express covenant to Henry Bayler, his heirs, for an indefeasible fee simple estate. The other party is estopped by this deed: 4 Kent's Com. 98. Mrs. Jay had an interest in her father's estate at the date of this conveyance, subject to be divested at the will of the father. The course which this property would take, was irrevocably fixed by his hopeless insanity, which continued until his death. This right she exercised, when, through her husband, she applied for the commission of lunacy.

The New York cases, which appear to be in conflict with this doctrine, are not applicable, because, in that state, livery of seisin is a necessary element of conveyancing; and, beside this, those that have been cited are unlike the one now under discussion, and all others of expectancy from ancestors.

A married woman is deemed a *feme sole* as to her right of disposing of her separate property: coverture affecting the manner of doing so, but not the power. If so, she may enter into covenants in regard to it, not personal, perhaps, but such as will estop her from denying the effect of her own acts of ownership: Jacques *v.* Methodist Episcopal Church, Am. Law Jour., vol. 5; 2 Story's Eq., §§ 1401, 1391; Paterson *v.* Robinson, 1 Casey 81; Black *v.* Galway, 12 Harris 134; Demarest *v.* Wynkoop, 3 Johns. Ch. Rep. 144; Duffy *v.* The Insurance Company, 8 W. & S. 413; Jamison *v.* Jamison, 3 Whart. 457; Sheidel *v.* Weishler, 4 Harris 134; Cummings' Appeal, 1 Jones; Goodyear *v.* Rembaugh, 1 Harris 480. A mortgage is no more than a contract of sale, and a mortgage executed by a *feme covert*, as proprietor, in the manner provided by law, is valid, so far as the property is concerned. It is not necessary for plaintiff's case that she be personally bound by the covenants in the mortgage; it is enough that her liability extends to what she cove-

[Bayler v. Commonwealth.]

nanted for, so far as to estop her from denying the effect of her deed, and from recovering money against it : see Smilie's Estate, 10 Harris 130 ; Lytle's Appeal, 12 Casey 131.

Even as an assignment of a chose in action, it is effectual: Siter's Case, 4 Rawle 468 ; Webb's Appeal, 9 Harris 248.

The acknowledgment of the wife cannot be contradicted by parol evidence, except in case of fraud or imposition : Watson v. Baily, 1 Binn. 470 ; Jourdan v. Jourdan, 9 S. & R. 268 ; Jamison v. Jamison, 3 Wh. 457 ; Loudon v. Blythe, 4 Harris 532. Nothing of the kind is pretended here. Her act was voluntary, and under the advice of her counsel.

*V. K. Keesey*, for defendant in error.—There are two kinds of possibilities recognised by the law, viz., the one coupled with an interest, the other a mere naked possibility. The former may descend, or be conveyed—the latter not : Roe v. Griffith, 1 W. Blacks. 606 ; Jones v. Roe, 3 Term Rep. 96 ; Fearne on Rem. 367–8 ; Jackson v. Waldron, 13 Wend. 219 ; Preston on Estates 204 ; Pelletine v. Jackson, 11 Wend. 120 ; McCracken v. Wright, 14 Johns. 194 ; De Haas v. Bunn, 2 Barr 335 ; Wilson's Estate, 2 Id. 330.

Nor was Mrs. Jay's estate affected by the lunacy of her father. The probability of her inheriting might have been increased by this fact, but Jackson v. Waldron rejects the consideration of such contingencies. This mortgage was not valid as a conveyance. A person can only convey that which he possessess. Nor can it operate by way of estoppel, for the reason given in Jackson v. Waldron, and Pelletine v. Jackson, above cited, and Jackson v. Vanderheyden, 11 Johns. 167.

The words "grant, bargain, and sell," are not binding on a *feme covert*, especially when the mortgage shows that she had no title. The Act of 1770 contemplated the conveyance of an existing estate, not a mere expectancy.

If no conveyance, it was not within the recording acts. Many of the cases cited by the plaintiff in error, are of executory contracts between parties able to contract, and are, therefore, not in point. Others refer to separate estates of wife, created by deed or will, while others relate to expectancies of an entirely different character from that involved in this case.

This mortgage was not executed according to the requirements of the Act of 1848. There was no previous separate acknowledgment by her in favour of a grantee who accepts such an instrument in good faith. The certificate of acknowledgment is conclusive ; but if it contain a false statement such as this did, as to a separate examination of the wife, which the grantee knew to be false, or which, as a prudent man, he might have known on

inquiry, it may be contradicted by parol evidence : Loudon *v.*
Blythe, 3 Casey 25 ; 4 Harris 532.

The opinion of the court was delivered, July 24th 1861, by
STRONG, J.—The mortgage given by Mrs. Jay and her husband
to Henry Bayler, was not a pledge or conveyance of any estate
which she owned at the time of its execution.   Nor did it profess
to assure to the mortgagee any present interest.   By it she bar-
gained and sold to Henry Bayler, his heirs and assigns, "all
the estate, right, title, and interest, in law or in equity, to which
she would become entitled on the death of her father, Jacob
Bayler, in his estate, real, personal, and mixed, by will, descent,
or otherwise."   She also covenanted jointly and severally with
her husband, to stand seised of the said estate, right, title, and
interest, to the use of Henry Bayler and his heirs, and to make
further assurances.   Her father was then living.   In his estate
she had no property—no interest.   The subject of the mortgage
was, therefore, nothing that she then had.   It was a mere expect-
ancy, and the instrument of mortgage was made, not for any
consideration then received by her, or parted with by the mort-
gagee, but solely for the purpose of securing a prior debt of her
husband.   Such being the facts of the case, and Mrs. Jay's
father having since died, the question presented is, whether the
mortgage is efficacious to enable the mortgagee to hold against
her the share of the father's lands which descended to her.

It is an old and well settled rule of the common law, that a
mere possibility cannot be conveyed or released ; and the reason
given for it is that a release or conveyance supposes a right in
being : Sheph. Touch. 319; Litt., § 446 ; 1 Inst. 265 a ; Fitz-
gibbon 234 ; McCracken *v.* Wright, 14 Johns. 193 ; Davis *v.*
Hayden, 9 Mass. 514.   At law, therefore, nothing passes by a
deed of land of which the grantor is only heir apparent.   Cer-
tainly nothing by its direct operation.   And this is as true of
conveyances which operate under the Statute of Uses, as of
others.   In such cases there is no seisin to give effect to the
statute ; and without seisin a conveyance can only operate as a
common law grant.   A covenant to stand seised to uses of land
which the covenantor shall afterwards purchase, is void : 2 Saund.
on Uses 83.   A man cannot, by covenant, raise a use out of
land which he hath not : Croke Eliz. 401.   Recitals, it is true,
and covenants, may conclude parties and privies, and estop them
from denying that the operation of the deed is what it professes
to be.   And when a deed purports to pass a present interest,
recitals and covenants have, in many cases, been held efficacious
to pass to the grantee an interest subsequently acquired by the
grantor.   But when the deed does not undertake to convey any
existing estate, when the subject of the grant is only an expect-

[Bayler v. Commonwealth.]

ancy, it is difficult to conceive of it as anything more than a covenant for a future conveyance. In the very nature of things it must be executory. The case in hand is an apt illustration. The intention of the parties was not to convey any immediate interest, for it was known Mrs. Jay had none. The grant and the covenants alike contemplated an assurance to the mortgagee of an estate which might possibly thereafter be acquired either by descent or will, an assurance necessarily future.

But though a conveyance of an expectancy, as such, is impossible at law, it may be enforced in equity as an executory agreement to convey, if it be sustained by a sufficient consideration. This has often been decided. In Hobson v. Trevor, 2 P. Wms. 191, Lord Chancellor Macclesfield compelled an execution of an agreement in marriage articles, to convey to the husband a third part of what should come to the father of the wife on the death of his father; and in Beckly v. Newland, 2 P. Wms. 182, the same chancellor enforced an agreement between the husbands of two presumptive heirs to divide equally what should be left to either of them. A similar agreement was enforced also in Wethered v. Wethered, 2 Sim. 183. See, also, Lyle v. Wynn, 8 Eng. Cond. Chanc. 406. These were all cases of executory agreements. But in Varick v. Edwards, 11 Paige 290, a formal conveyance of a possibility, or expectancy, though it had been ruled inoperative at law, was held good in equity. And in McWilliams et al. v. Neely, 2 S. & R. 507, Chief Justice Tilghman said, that "if one enter into articles to convey, in case subsequent events should make it lawful, there could be no doubt that in equity he would be decreed to convey when he subsequently acquired the power." And he added he did not think the case less strong because, instead of entering into articles, he makes an absolute conveyance.

Regarding then the mortgage made by Mrs. Jay of the estate which she expected thereafter to inherit from her father, as inoperative at law, and valid only in equity, if valid at all, it is next to be seen whether a chancellor would enforce it. That he would not, unless it was made for a valuable consideration, will not be claimed. The equity of the mortgagee, if any, springs out of the consideration, and, if that is wanting, he will vainly ask the aid of a chancellor. The reason why, before the Act of April 11th 1848, the husband's voluntary assignment of a wife's chose in action, did not destroy her right of survivorship, although he had succeeded to her dominion over the chose, was, because a chose in action was assignable only in equity; and an assignee without value given, was regarded as destitute of equity. In his behalf, therefore, no chancellor would move to enforce the assignment: Hartman v. Dowdell, 1 Rawle 281. It is not to be doubted that a wife may mortgage her lands for her husband's debt, by

[Bayler *v.* Commonwealth.]

uniting with him in the instrument. And if this had not been a mortgage of mere expectancy, it would have been good without the interposition of a court of equity. It is because this mortgagee must come into such a court, that it becomes material to inquire whether there was such a consideration for the instrument as to induce a chancellor to interfere to give it effect. It was given to secure an antecedent debt of the husband. No new consideration was given at the time it was executed. The wife received nothing—the husband received nothing—the creditor parted with nothing. The instrument was, therefore, no more than a collateral security given for an old debt of the husband. As between Mrs. Jay and Henry Bayler, he was not a purchaser for value: Petrie *v.* Clark, 11 S. & R. 377; Walker *v.* Geise, 4 Whart. 258; Depeau *v.* Waddington, 6 Id. 220. The question, then, is reduced to this: Will a court of equity interfere in favour of one who is an assignee or covenantee, but not for value, to enforce a wife's engagement to pay an old debt of her husband's? The answer is plain. If it will not decree the performance of an ordinary agreement, not founded on a valuable consideration, much less will it enforce such a contract against a *feme covert.* A creditor of the husband, who asks that the wife's estate shall be applied to the discharge of her husband's debts, must show a legal right or a complete equity. It is by no means clear that a married woman can, by any form of conveyance, even in equity, convey the estate which she expects to inherit. I know of no case in which such a conveyance has been sustained, and I doubt whether it is authorized by the Act of 1770, that established the mode by which a husband and wife may convey the estate of the wife. There are decisions in other states, that when a married woman, in conjunction with her husband, undertakes to convey her land with covenants of warranty, her deed estops her from claiming an after-acquired title. The after-acquired estate, as in other cases, is held to feed the estoppel: Nash *v.* Spofford, 10 Met. 192; Hill's Lessee *v.* West, 8 Ohio 226. Even this, however, has been denied in New York, New Jersey, and New Hampshire. But the case is very different where the wife attempts to convey and warrant land which she does not own, but something which she hopes or expects afterwards to acquire. It may be doubted whether, to do such an act, all common law disability does not remain. Whether this be so or not, her deed is no more than an executory contract, and, if supportable in equity, requires a valuable consideration to give it life. There having been none for the mortgage of Mrs. Jay —no other having been shown than a precedent debt of the husband, which the instrument was given to secure, the Court of Common Pleas committed no error in instructing the jury that it could not be enforced as the mortgage of the wife.

[Bayler *v.* Commonwealth.]

This view of the case makes it needless to consider the exception taken to the admission of evidence to contradict the commissioner's certificate of the wife's separate acknowledgment.

The judgment is affirmed.