STEELE and others *v.* FRIERSON and others.

(*Nashville.* February 16th, 1887.)

1. SALE OF EXPECTANCIES. *Equity will enforce.*

The sale or assignment, in good faith, and for a valuable consideration, of the estate in expectancy of an heir apparent, is valid, and will be upheld and enforced in courts of equity.

Case cited and approved: Fitzgerald *v.* Vestal, 4 Sneed, 257.

2. SAME. *Purchaser's rights. Advancements to heirs. Debts.*

The purchaser of the estate in expectancy of an heir apparent, takes it, subject to *advancements* made to the heir, but not subject to *debts* due from the heir to the ancestor's estate.

Cases cited and approved: Johnson *v.* Hoyle, 3 Head, 56; Mayor *v.* Ins. Co., 2 Bax., 303; Towles *v.* Towles, 1 Head, 601; Mann *v.* Mann, 12 Heis., 246.

3. ADVANCEMENTS. *Father paying his son's debts.*

Payments made by a father on his son's debts are presumed to be advancements to the son; and in the absence of any proof of a contrary intention on the part of the father, will be treated as advancements in the settlement of his estate. This presumed intention of the father may, however, be rebutted by proof.

Case cited and approved: Johnson *v.* Hoyle, 3 Head, 56.

4. SAME. *Interest on. Correction of Master's report, without exception.*

Advancements draw interest, as matter of law, from the date of the ancestor's death; and a Master's report omitting to charge interest on advancements may be corrected by the Court, without exception.

5. SUPREME COURT PRACTICE. *Exclusion of evidence by Chancellor. Bill of exceptions necessary.*

Evidence excluded on the hearing by the Chancellor cannot be looked to by this Court, unless it is made part of the record by bill of exceptions.

(See 8 Lea, 453; 1 Hum., 431; 1 Swan, 289.)

---

### FROM BEDFORD.

---

Appeal from Chancery Court of Bedford County. JNO. W. BURTON, Ch.

WARDEN & MOODY for Complainants.

COOPER & FRIERSON for Defendants.

LURTON, J. Thos. S. Steele, being largely indebted to A. Frierson, executed and delivered to him the following assignment:

"For value received, I, T. S. Steele, of the County of Bedford, and the State of Tennessee, do hereby bargain, sell, transfer, and convey unto Albert Frierson, of the same county and State, all my interest in the estate of my father, P. C.

Steele, Sr., also of Bedford County, Tenn., of every kind and character whatever, in real, personal, and mixed property. The true consideration being the following: "I am indebted to said Frierson in a large amount, and the foregoing sale and conveyance is made by me in part payment of said indebtedness. The precise amount of my said interest is not known, as my father is still alive; but when ascertained the said Frierson is to credit my indebtedness to him with the amount received by him from the said estate. Witness my hand and seal, this December 1st, 1876."

This paper was acknowledged before the Clerk of the County Court on the 2d of December, 1876, and delivered without being registered to Mr. Frierson. P. C. Steele, Sr., the father of the grantee, Thos. S. Steele, was then living, and was the owner of a large estate, real and personal. On the —— of July, 1880, P. C. Steele, Sr., died intestate, his heirs and distributees being ten sons and daughters, one of whom was Thos. S. ·Steele. Immediately upon his death Mr. Frierson caused the assignment above set out to be registered. This bill was filed by the administrators of P. C. Steele, against said Albert Frierson and the heirs of P. C. Steele, to have an account between the estate and Thos. S. Steele, of advancements claimed to have been made to him by his father; but if the claims in favor of the estate are held to be debts, and not advancements, then it seeks to have the interest of said Thos. S. Steele in the estate

of his father subjected to the payment of such indebtedness. The assignment of the expectancy of Thos. S. Steele in the estate of his father is charged to be void, and a fraud upon the estate of his father, and that it is inoperative as against either advancements or debts due to his father. No fraud; in fact, is either proven or charged. The proof abundantly establishes that Mr. Frierson, as security for Thos. S. Steele, had paid debts amounting to between $12,000 and $14,000. This assignment of this expectancy was voluntarily made, as the only means by which any part of this large and meritorious debt could be paid. Is such an assignment of the expectancy of an heir void as matter of law? Whatever may be the rule at law concerning the validity of the sale or assignment of an interest or right not in existence, there can be no doubt that courts of equity will give effect to such assignments fairly made, in behalf of innocent purchasers. "Contingent interests and expectancies may not only be assigned in equity, but may also be the subject of a contract, such as a contract of sale, when made for a valuable consideration, which courts of equity, after the event has happened, will enforce." * * * "So even the naked possibility or expectancy of an heir to his ancestor's estate, may become the subject of a contract of sale or settlement, and in such case, if made *bone fide* for a valuable consideration, it will be enforced in equity after the death of the ancestor, not, indeed, as a trust

attaching to the estate, but as a right of contract."
Story Eq. Juris., Section 1040*b*.

The ground upon which such assignments are
enforced in equity is stated most satisfactorily by
Professor Pomeroy:

"The doctrine of equitable assignment of prop-
erty to be acquired in future is much broader
than the jurisdiction to compel the specific per-
formance of contracts. In truth, although a sale
or mortgage of property to be acquired in future
does not operate as an immediate alienation at
law, it operates as an equitable assignment of the
*present possibility*, which changes into an assign-
ment of the equitable ownership as soon as the
property is acquired by the vendor or mortgageor;
and because this ownership thus transferred to the
assignee is equitable and not legal, the jurisdiction
by which the right of the assignee is enforced,
and is turned into a legal property accompanied
by the possession, must be exclusively equitable. A
court of law has no jurisdiction to enforce a right
which is purely equitable." Pomeroy Eq., Section 1288.

Again, he says legislation recognizing such as-
signments as legal being out of the way, "that ac-
cording to the general course of decision (such
rights) are assignable in equity for a valuable con-
sideration; and equity will enforce the assignment
when the possibility has changed into a vested in-
terest or possession." *Idem*, Section 1287.

Even at law the sale of an interest in the lands
of an ancestor living has been enforced, but gen-

erally by aid of the operation of the doctrine of estoppel springing from the covenants in the deed. The argument that the assignment now under discussion contains no covenants might be effective in a court of law; but, regardless of the doctrine of estoppel, such an assignment or sale is operative in equity as an equitable assignment of a future interest, and upon the expectancy being converted into a vested interest, will be enforced by courts of equity.

Such an assignment was enforced by this Court against an attaching creditor, the Court saying that "the question was too well settled to require or even allow debate at this day." *Fitzgerald* v. *Vestal*, 4 Sneed, 257. The fact that such sales or assignments will be closely scrutinized by courts to prevent frauds upon expectant heirs or persons in necessitous circumstances does not at all affect the power of the courts to give effect to such sales when fairly made and for full consideration.

Thos. S. Steele at the time he made this assignment was probably forty years of age, a lawyer by profession, and the Clerk of the Chancery Court. No advantage is pretended to have been taken of him, and neither he nor his representatives have sought to set it aside. Upon the death of P. C. Steele, Sr., and the registration of this conveyance, it operated to at once vest in the grantee the interest of the grantor as an heir and distributee in the estate of his father. So far as P. C. Steele had made advancements to his son, they must be accounted for in diminution of

the interest assigned—that is, the interest assigned is clearly subject to be charged with legal advancements. No assignment by an heir either before or after the interest has vested in him, and no attachment or levy by a creditor of such heir will defeat an account of advancements. *Johnson v. Hoyle*, 3 Head, 56; *Mayor v. Potomac Insurance Company*, 2 Bax., 303.

But on the other hand the indebtedness of an heir to the intestate is not a lien upon the interest of the heir in the estate, and such share is therefore subject to the creditors of the heir, or to sale or assignment by the heir; and if the creditor obtain the first lien either by levy or attachment, or obtain an assignment before the administrator has taken steps to fix a lien upon such interest, the creditor's right, in either case, will be superior. *Towles v. Towles*, 1 Head, 601; *Mann v. Mann*, 12 Heis., 246.

There is no doubt of the correctness of the decree of the Chancellor in holding that the item of $1,000 paid by the intestate for his son, Thomas, was an advancement. It was a debt of the son paid by the father. No note or other obligation was taken by the father, and there is no circumstance indicating an intent that it should become a debt. In such case it is well settled that it will be charged as an advancement. *Johnson v. Hoyle*, 3 Head, 56.

The Chancellor should have allowed interest on this advancement from the date of the testator's

death. The report of the Master is not excepted to upon the ground that interest is not reported on this advancement. But we do not think it was necessary, because, as matter of law, such advancements bear interest. The question is properly raised by exception to the report of the Referees, and the decree of the Chancellor and report of Referees will be corrected upon this point.

The item of $3,000 paid by the intestate upon the liabilities of T. S. Steele as Clerk and Master, we think, under the facts of this case, was not an advancement, but is a debt. This fund was paid into the hands of Col. Edmund Cooper, to be by him applied in the payment of the official liabilities of Thos. Steele. Colonel Cooper gave a receipt for this fund to the intestate, in which he stated that this was paid as an advancement. This receipt was not accepted by the intestate, for he proposed another, an exact copy of the original, omitting the words "as an advancement," and sent it to Colonel Cooper for his signature, and returned at the same time the original receipt. The second was signed by Colonel Cooper and sent to the intestate, and this was found among his valuable papers. This is a most significant circumstance, indicating very clearly that he desired to retain this as a claim or liability and did not intend it as an advancement. The evidence of the agent who carried this second receipt to Colonel Cooper, even if sufficient to explain the objection to the first receipt, is not before us. The evi-

dence was objected to upon the ground that the witness was a party in interest and a party to this suit, and not competent to testify as to any conversation with the intestate. The record shows that the Chancellor excluded the evidence, and no bill of exceptions makes the excluded evidence a part of the record. Where evidence is excluded by the Chancellor his action can only be reviewed by us by a bill of exceptions showing the excluded evidence and his ruling upon it.

There is no other competent evidence sufficient to affect the result reached in holding this matter a debt and not an advancement. There can be no question but that the other two items are likewise debts.

The decree of the Chancellor will be affirmed except in the matter of interest upon the advancements. The report of the Referees is likewise confirmed, except as modified in the same matter. The costs will be paid by appellants.