Taylor v. Swafford.

MRS. E. J. TAYLOR, by next friend, *v.* G. W. SWAFFORD *et al.*

(*Knoxville.*    September Term, 1909.)

1. **EXPECTANCIES IN INHERITANCE.** Sale by heir expectant and sui juris, will be sustained, if fair.

   A contract of sale of an expectancy in inheritance by an heir expectant and *sui juris,* while jealously viewed and closely scrutinized, yet, if fair and honest, will be sustained by a court of equity.    (*Post, p.* 307.)

   Cases cited and approved: Fitzgerald v. Vestal, 4 Sneed, 258; Steele v. Frierson, 85 Tenn., 430; Read v. Mosby, 87 Tenn., 759.

2. **SAME.** Same. Sale by heir expectant and sui juris will be sustained as a convenant to convey, when property comes into possession.

   A contract of sale of an expectancy in inheritance by an heir expectant and *sui juris*, if fairly made and based on a valuable consideration, will be enforced as against the grantor and his privies, whenever the property comes into his possession, upon the theory that the conveyance is treated and operates as an agreement or covenant to convey.    (*Post, pp.* 308-311.)

   Cases cited and approved: Chew v. Barnet, 11 Serg. & R. (Pa.), 389; Bayler v. Commonwealth, 40 Pa., 37; Railroad v. Woelpper, 64 Pa., 366; McDonald v. McDonald, 58 N. C., 214; Page v. Gardner, 20 Mo., 507; Seymour v. Railroad, 25 Barb. (N. Y.), 285; Squib v. Wyn, 1 P. Wms., 381; Trevor Case, 2 P. Wms., 191; Wright v. Wright, 1 Ves., 412.

3. **MARRIED WOMEN.** Their deeds were void at common law, and the validity thereof depends upon statute.

   The deed of a married woman conveying her land was absolutely void at the common law, and she was also incapable, under

Taylor v. Swafford.

said law, of binding herself by contract; and, therefore, her power to contract for the sale of her real estate depends upon statutory authority, which must be strictly followed. (*Post, pp.* 310-312.)

Cases cited and approved: Cope v. Meeks, 3 Head, 387; Gillespie v. Worford, 2 Cold., 632.

4. **EXPECTANCIES IN INHERITANCE.** Conveyance by married woman is void for want of statutory power.

A deed of trust executed by a married woman, though joined in by her husband, attempting to convey her expectancy as an heir in the estate of her father while living, or her possibility of inheritance in his estate, is void for want of statutory authority. (*Post, pp.* 305, 306, 312.) .

5. **SAME.** Same. Married woman is not estopped by warranty of title in her deed void for want of power.

Where a married woman's deed conveying her expectancy as an heir in the estate of her father was void for want of power to make it, she will not be estopped to claim the property subsequently descending to her from her father by reason of the warranty of title contained in such deed. (*Post, pp.* 312, 313.)

Cases cited and distinguished: Gore v. Howard, 94 Tenn., 577; Bruce v. Goodbar, 104 Tenn., 638.

6. **SAME.** Same. Same. Married woman is not estopped to assert invalidity of her deed void for want of power by short delay not prejudicial to parties.

Where a married woman was induced to sign and acknowledge a deed of trust conveying her expectancy as heir in her father's estate to secure debts of her husband, in the making of which debts she had no part, and from which she received no benefit, by being fraudulently told or impressed by her husband and son that the instrument conveyed the husband's property only, and no money was ever paid to her, and she did nothing to mislead the holders of the deed to their prejudice, she was not

Taylor v. Swafford.

estopped, by her failure to protest against the fraud immediately on discovering it, nor by her inaction before seeking relief against the deed, to assert its invalidity. (*Post, pp.* 313, 314.)

7. **SAME. Married woman's deed of trust set aside as void without requiring reimbursement of moneys advanced to or for her husband, when.**

Where a married woman's deed of trust, attempting to convey her expectancy as heir in the estate of her father as security for her husband's debts, is set aside because it was absolutely void, *ab initio*, she will not be required to reimburse a beneficiary thereunder for moneys paid by him to her husband or at his instance and request when the deed was executed and delivered, or within a reasonable time thereafter. (*Post, pp.* 314, 315.)

FROM BLEDSOE.

Appeal from the Chancery Court of Bledsoe County. T. M. M'Connell, Chancellor.

Pritchard & Sizer, for complainant.

Burkett, Miller & Moore and Louis S. Pope, for defendants.

Mr. Chief Justice Beard delivered the opinion of the Court.

On the 15th of March, 1902, the complainant, then and at the time of the filing of her bill in this cause the

wife of one of the defendants, joined her husband in the execution of a trust deed, conveying for the security of debts of her husband, in the contraction of which she took no part, and from which, so far as we can discover, she derived no benefit, her expectancy as an heir of, or possibility of inheritance from, her father, who was then alive. A large part of the debts thus sought to be secured were created prior to the making of the trust deed. As compared with the whole, only a small part of the consideration passed, at the time of its execution, or in reliance upon it as security.

The record shows that the father had no knowledge of the existence of this deed; it being kept from the records until after his death. Upon the death of the father, without a will, the trust deed was foreclosed, and the share of the complainant, as distributee and as heir in her father's estate, was purchased by one of the beneficiaries, as trustee, for all the beneficiaries named therein. Subsequently the interest of the complainant in her father's personal estate was paid by the administrator to the defendant Miller, and her share of the real estate was sold in several parcels to the defendants Swafford and Taylor.

The present bill is filed by the complainant, to have declared void and inoperative, so far as she is concerned, the trust deed of March 15, 1902, to have removed as clouds upon her title the claims of Swafford and Taylor, and for a decree against the administrator and Mil-

ler for the money paid by the former to the latter out of her distributive share in her deceased father's estate.

Upon the record, two questions are presented: First, was this trust deed, executed as it was with due statutory formality, sufficient to carry into the trustee the expectancy, or possibility, of complainant as distributee and heir of her father's estate? And, second, if not, then, when the father died, did this after-acquired estate inure to the trustee under the rule of estoppel, the trust deed containing a warranty of title in which the *feme covert* joined?

Beginning with *Fitzgerald* v. *Vestal,* 4 Sneed, 258, and extending down through the successive cases of *Steele* v. *Frierson,* 85 Tenn., 430, 3 S. W., 649, and *Read* v. *Mosby,* 87 Tenn., 759, 11 S. W., 940, 5 L. R. A., 122, the rule is announced that a contract of sale by an expectant heir, while looked upon with jealousy and closely scrutinized, yet, if fair and honest, will be sustained by a court of equity. These cases, however, involved the contracts of expectants, who at the time of making them were *sui juris,* while here we are dealing with one who, at the time of joining in the trust deed in question, was laboring under the disability of coverture.

It is an old and well-settled rule of the common law that, in order to constitute a valid contract of sale, there must be a grantor and grantee, and a thing in existence at the time of the contract; hence, under this rule, a mere possibility could not be conveyed. *Mc-*

*Crackin* v. *Wright,* 14 Johns. (N. Y.), 193; *Davis* v. *Hayden,* 9 Mass., 514; *Bayler* v. *Commonwealth,* 40 Pa., 37, 80 Am. Dec., 551; 2 Leading Cases in Equity (White & Tudor's Ed.), pt. 1, p. 1605.

It is true that recitals and covenants might be of such a character as to conclude parties and privies and estop them from denying the full operation of the instrument, and so in many cases, even in courts of law, such recitals and covenants were held sufficient upon the principle of estoppel to pass to the grantee an interest in the property conveyed subsequently acquired by the grantor.

But, independent of the rule of estoppel, both in English and American courts of equity, where it is found that the contract of an expectant has been fairly made and upon a valuable consideration, it will be enforced, as against the grantor and his privies, whenever the property covered by it comes into possession. This is done, however, by these courts, not upon the ground that the grant is one of a present interest, but rather upon that stated by Gibson, C. J., in *Chew* v. *Barnet,* 11 Serg. & R. (Pa.), 389, to wit: "That a conveyance, before the grantor has acquired the title, operates as an agreement to convey, which may be enforced in chancery between the parties and against purchasers with notice."

This seems to be the theory upon which these courts have acted with regard to such contracts. "Such an assignment," said Lord Chancellor Hardwicke, in

*Squib* v. *Wyn,* 1 P. Wms., 381, "always operates by way of agreement or contract, amounting in the consideration of the court to this: That one agrees with another to transfer or make good that right or interest (*Wright* v. *Wright,* 1 Ves., 412); and like any other agreement will cause it to be specifically performed . . . when the assignor is in a condition to transfer the property, or to cause it to be transferred, to his assignee."

In *Bayler* v. *Commonwealth,* supra, it is said: "When the deed does not undertake to convey any existing estate, when the subject of the grant is only an expectancy, it is difficult to conceive of it as anything more than a covenant for a future conveyance." And in *McDonald* v. *McDonald,* 58 N. C., 214, 75 Am. Dec., 434, the supreme court of that State, speaking through that eminent jurist, Judge Battle, says that it is well sustained by authority that "chancery will give effect to a conveyance of a mere expectancy or possibility, not as a grant, but as a contract entitling the assignee to a specific performance when the assignor has acquired the power to perform it." To this proposition many authorities are cited in the opinion.

In Benjamin on Sales, 96, the distinction between a contract with regard to a thing in existence and that which has no existence is clearly stated. While things having a potential existence may be the subject of a sale, yet, said this author, "one can only make a valid agreement to sell, not an actual sale, where the subject of the contract is something to be afterwards acquired,

as the wool of any sheep, or the milk of any cow, or any goods to which he may obtain title within the next six months."

In the *Trevor Case,* 2 P. Wms., 191, a contract in consideration of marriage to settle all such lands as might come by descent, or otherwise, from the obligor's father, was enforced, after the death of the father, by the chancellor, as an agreement resting on a valuable consideration.

As supporting the proposition that such a contract is treated in equity simply as a covenant to convey, see *Philadelphia, W. & B. R. Co.* v. *Woelpper,* 64 Pa., 366, 3 Am. Rep., 596; *Page* v. *Gardner,* 20 Mo., 507; *Seymour* v. *Railway Co.,* 25 Barb. (N. Y.), 285.

It is true that Mr. Pomeroy, in his work on Equity Jurisprudence (volume 3, sec. 1288), expresses dissatisfaction with the view of such a conveyance announced by these high authorities, as to the ground upon which equity takes jurisdiction of, and enforces, performance of a conveyance of an expectancy when it falls in, but rather is disposed to regard the contract "as an equitable assignment of a present possibility, which changes into an assignment of the equitable ownership as soon as the property is acquired by the vendor, or mortgagor;" the rights of these latter to be enforced in a court of equity.

But, if it be that the rationale of the rule is that which has behind it the opinion of such great judges as Lord Chancellors Hardwicke and Westbury, and the opin-

ions of many courts in England and America of the highest authority, that a grant by an expectant is simply a "covenant to convey," or the view of Mr. Pomeroy be accepted, that "it is an equitable assignment of a present possibility," can the deed of trust involved in this controversy be interposed as a barrier by these defendants, when the complainant calls upon a court of equity in this State to protect her from the consequences of its execution? We are satisfied, under our cases, that if the trustee, or the beneficiaries, were here asking an enforcement of this trust deed, unless protected by the doctrine of estoppel, they would be repelled.

It is a matter of common learning that the deed of a married woman was absolutely void at common law. The only way open to her by which she could convey her title to land was by joining her husband in a fine. But it was equally the general rule of that law that a *feme covert* was incapable of binding herself by contract. This rule has been so often recognized and applied in our courts that it needs no citation of authorities in its support. Whatever power of contract a *feme covert* has, save in the matter of her separate estate, or in the transfer of her choses in action, or in transfers of a somewhat like nature, is purely statutory. Whereever an effort is made to bind her, or her property, with the exceptions just mentioned, the party seeking to do this must find his remedy in a statute. In dealing with her real estate, the rule is inflexible that the statute

giving authority for such dealing must be strictly followed. She cannot convey unless her husband joins in the deed (*Cope* v. *Meeks,* 3 Head, 387); nor by an attorney in fact (*Gillespie* v. *Worford,* 2 Cold., 632), nor obligate herself by bond to convey title.

In view of these holdings, certainly, if this instrument be as the great weight of authority indicates, and as we deem it, merely a covenant to convey, or even if Mr. Pomeroy's view is adopted, then, in either event, lacking statutory power to make such a contract, this trust deed was inoperative against the complainant, and affords no protection to the defendants, unless they can invoke the rule of estoppel. This it is insisted they may do by reason of the warranty of title which the instrument contains.

While it is true that there are cases referred to in *Bruce* v. *Goodbar,* 104 Tenn., 638, 58 S. W., 282, which hold that a *feme covert,* equally with one *sui juris,* is estopped to set up an after-acquired title against a grantee holding under a warranty deed, this is not so in a case like the present, where the instrument in question is invalid for lack of power to make it. For it is a general rule that a married woman is not estopped by her unauthorized or invalid deed, since she cannot be estopped by any conveyance she had no power to make. 21 Cyc., 1343, and cases cited. Even where a deed is perfect in form, yet is not executed in the mode provided by statute, the warranty does not work an estoppel as to the married woman. 11 Am. and Eng. Ency. of Law (2d Ed.), 393, and cases cited.

The case of *Gore* v. *Howard,* 94 Tenn., 577, 30 S. W., 730, is not in conflict with this view. There certain children of the testator in his lifetime for a valuable consideration. released to him all interest they had in his estate. At his death they sought to contest his will, and they were repelled in the lower court. On appeal this court, speaking through McAlister, J., said, in answer to the argument that, though such assignments would be protected in courts of equity, that at law they were absolutely void: "While the proposition is true as applied to the enforcement of such assignments for the recovery of specific property, it is also true that an estoppel may arise out of such transactions which may be successfully interposed in a court of law. It appears from the record that the defendant's distributees executed those releases, and as a consideration for executing them accepted large sums of money from their ancestor, the testator. . . . The defendants still hold onto the fruits of the transaction, and yet seek to disaffirm the contract. . . . The testator was undoubtedly misled by these petitioners to his prejudice, being induced by their promise and agreement to part with large sums, which they appropriated and have enjoyed. We think that under these circumstances they are now estopped from contesting this will."

We find no such circumstances in this record to raise the rule of estoppel as against the complainant. She had nothing whatever to do with the making of the debts secured, nor was she consulted with regard to the mak-

ing of the trust deed.   It was prepared by one of the beneficiaries, and transmitted by mail to her husband at the family home.   There it was presented to her, and, while some discrepancies are found in the testimony of the husband and of the son with regard to what was said to her at the time of its execution, as well as to other matters, yet we are satisfied that when she signed and acknowledged this trust deed it was under the impression, fraudulently made by her husband and son, that it was an instrument that conveyed alone the property of her husband for the security of the debts.   No money was paid to her, and, so far as we can see, nothing that she has done has misled the parties to their prejudice.   It is true she did not protest against the fraud practiced after having discovered it a short time before her father's death, nor did she, so far as we can see, appeal to him or resort to the court for relief during his life; but we are unable to discover in what respect the beneficiaries in this instrument were injured by her silence and her inaction.   Beginning a few months after her father's death, she made one after another abortive effort in an appeal to a court of equity to relieve her; but, for reasons unexplained in this record, her various suits were dismissed without a trial of the issues, but without prejudice to her claims.   Finally, through the present bill she did succeed in obtaining a foothold, and was decreed by the chancellor what she sought, and his decree granting such relief is in all things affirmed.   The decree is reversed only in so far

as it adjudges that the defendant Miller is entitled as against complainant to be reimbursed all sums paid by him in·cash to defendant W. G. Taylor on the day of the execution of the deed in trust in question, and also moneys paid by him on that day, or within a reasonable time thereafter, at the instance and request of the husband, W. G. Taylor, and so much of the order of reference as required the clerk and master to report as to the sums of money so paid; this court holding complainant is in no way obligated to reimburse the defendant Miller for any moneys paid by him to, or at the instance of, complainant's husband.

The case is remanded for the taking of the account in other respects ordered by the chancellor.