## JOHN H. HOOKER *v.* W. H. PETERSON *et al.*

### (*Jackson.*　April Term, 1918.)

1. **WITNESSES.** Transactions with decedents. Competency of parties.

Where plaintiff filed bill under Thompson's-Shannon's Code, sections 4000, 4001, to subject decedent's real estate to payment of a debt, the administrator being a necessary party, and an accounting being necessary, the judgment after which would run against the administrator, plaintiff could not, under Thompson's-Shannon's Code, section 5598, testify as to transactions with deceased. (*Post, pp.* 285-288.)

Cases cited and approved: Dulles v. Read, 14 Tenn., 53, 68; Apperson v. Harris, 75 Tenn., 323; Henry v. Mills, 69 Tenn., 151; Grier v. Canada, 119 Tenn., 17; Hamilton v. Zimmerman, 37 Tenn., 39; Cooley v. Steele, 39 Tenn., 605; Lee v. Calvert (Ch. App.), 57 S. W., 627; Allen v. Westbrook, 84 Tenn., 251; Stephenson v. Walker, 67 Tenn., 289; Chilton v. Scruggs, 73 Tenn., 308; Stillman v. Stillman, 66 Tenn., 175; First Nat. Bank at Jacksboro v. Lancaster, 196 U. S., 115; Rand v. Iowa Central R. R. Co., 96 App. Div., 413; Goodloe v. Goodloe, 116 Tenn., 252; Green v. Orgain. (Ch. App.), 46 S. W., 477.

2. **BANKRUPTCY.** Scheduling assets.

Where stepfather died without having performed his contract to deed or will land to his stepson in consideration of the latter's services as son, the stepson was not estopped to sue stepfather's administrator for value of such services by the fact that in stepson's bankruptcy proceedings, during stepfather's lifetime, he omitted to schedule his claim against his stepfather; the claim being a mere expectancy dependent on contingencies. (*Post, pp.* 288, 289.)

Case cited and approved: Taylor v. Swafford, 122 Tenn., 303.

FROM SHELBY.·

Appeal from the Chancery Court of Shelby County.
—Hon. F. H. Heiskell, Chancellor.

Yandell Haun and Phil M. Canale, for appellant.

A. J. Calhoun and Gates & Martin, for appellee.

Mr. Chief Justice Neil delivered the opinion of
the Court.

The substance of the controversy is this:  Com-
plainant claims that Peter Hooker, the intestate of
W. H. Peterson, the father of said W. H. and of the
other defendants of that name, and of the married
women defendants, became the husband of complain-
ant's mother, after the death of the mother of the
defendants; that complainant and his younger
brother, children of a former marriage of the mother,
became members of Peter Hooker's family; that
Peter Hooker owned no land at that time; that in
1893 Peter Hooker contemplated the purchase of
the tract of land which is the chief subject of con-
troversy here; that during that year he bought the
land, and made a contract with the complainant and
his brother, to the effect that, if they would remain
with him and work, and thereby help to pay for the
farm and be as sons to him, he would either deed

the land to them, or at his death make a will in their favor to the land; that after a time complainant's younger brother died; that complainant remained on the place and worked and helped to pay for the land, and continued as a son to Peter Hooker until his death, which occurred on June 26, 1914; that Peter Hooker died without deeding the land to him or making a will; that the personal services he performed for Peter Hooker, covering 156 months, were worth $2,340; that he paid various sums of money for Peter Hooker, and furnished groceries and the like to him which aggregated $1,757.24; that his whole bill against the estate consists of these two amounts, which aggregate $4,097.24.

Complainant filed his bill, seeking to subject the real property of the estate to the payment of the indebtedness thus claimed, on the ground that the personal assets were insufficient to pay the debts, and that the land would have to be subjected. An answer was filed by defendants, denying the account.

A jury was impaneled, and issues were submitted to them covering substantially all of the points mentioned in the summary which we have given.

On the trial complainant was introduced as a witness in his own behalf. Objection was made to his competency on the ground that he was testifying against the administrator of the deceased in violation of Thompson's Shannon's Code, section 5598.

This section provides that in actions or proceedings by or against executors, administrators, or guardians,.

in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate, or ward, unless called to testify thereto by the opposite party.

The chancellor overruled the objection, stating in his charge to the jury that, while the evidence would not be competent against the administrator, it would be competent against the heirs for the purpose of reaching the land.

The trial proceeded to a verdict and judgment, the complainant being the principal witness, but supported in most aspects by other witnesses. The jury returned responses to the issues submitted as follows:

"(1) Was there an agreement between Peter Hooker and John Hooker that the latter should stay on the farm mentioned, and work the same and help Peter Hooker pay for the same, and be a son to Peter Hooker during his life, and render to him the servives of a son? A. Yes.

"(2) If you answer the first issue yes was Peter Hooker to remunerate John Hooker for the service and relation above mentioned in issue No.1, by making him a deed to the farm mentioned, or by a will devising his estate, or part of it, to John Hooker at the death of Peter Hooker, he having survived his wife? A. Yes.

"(3) If you find that complainant was to have a part of the property and not the whole, then say what part. A. The entire estate.

"(4) If you find there was such an understanding and agreement as referred to, when was it made? A. At the time of the purchase and often thereafter.

"(5) If you find there was such an agreement, did complainant carry out his part thereof? A. Yes.

"(6) If you find there was such an agreement and in reliance thereon complainant advanced said Peter Hooker any sum or sums, state the aggregate of such sums. A. Seventeen hundred and fifty-seven dollars and twenty-four cents ($1,757.24).

"(7) If you find that there was such an agreement, what was the reasonable value of the services rendered by complainant to Peter Hooker, deceased, thereunder? A. Twenty-three hundred and forty dollars ($2,340.00)."

The chancellor, after a motion for a new trial was overruled, rendered a judgment upon the verdict against W. H. Peterson, as administrator, for the aggregate of the two sums mentioned in responses to the sixth and seventh issues, for $4,197.24, and all of the costs of the cause. He adjudged that personal property had come into the administration not exceeding $1,200; that before the filing of the bill the administrator had paid all of the debts of the estate except complainant's debt; that the residue of the personalty had been distributed among the heirs and distributees of Peter Hooker, deceased, as they were entitled in law, and thereupon directed a sale of the real estate for the payment of complainant's debt.

An appeal was prayed and prosecuted to this court. Here the defendants assigned numerous errors. The errors assigned from No. 1 to No. 15, inclusive, covered various points in the testimony of the complainant, wherein he desposed to conversations and transactions with the decedent.

We think that complainant was improperly permitted to testify as to any of the matters covered by these assignments. The bill was filed under sections 4000 and 4001 of Thompson's Shannon's Code for the purpose of subjecting the real estate of decedent to the payment of a debt of the intestate. Under such a bill the administrator is a necessary party. *Dulles* v. *Read,* 6 Yerg. (14 Tenn.), 53, 68; *Apperson* v. *Harris,* 7 Lea (75 Tenn.), 323; *Henry* v. *Mills,* 1 Lea (69 Tenn.), 151. Before the land can be sold it is necessary to have an accounting with the administrator. Therefore a judgment may be rendered either for or against him in his representative capacity. An ascertainment of the debt and a judgment of the court to that effect is a judgment against the administrator, and if he has exhausted the personal assets a decree to that effect is a judgment in his favor. At all events, he must be before the court in order to ascertain the right of the creditor or creditors to go upon the land. It is true the heirs must be brought before the court before the land can be subjected, and they are entitled to be heard on the question of the proper administration of the personal estate in the hands of the administrator. But this

fact does not dispense with the necessity of having the administrator before the court, and of having an accounting with him.

Therefore we think the chancellor committed error in permitting the jury to hear the testimony of complainant on the points mentioned.

But it is insisted by the complainant that, even if the testimony referred to was incompetent, there is sufficient other evidence in the record to support the verdict. Upon this point we have carefully examined the evidence, and we are of the opinion that the contention of the complainant is well taken as to all of the issues except No. 6. That is to say, the contract is fully proven by other witnesses, and that the value of complainant's services was as stated in the reponse of the jury to issue No. 7. The answer to issue No. 6 cannot be supported without the aid of complainant's incompetent testimony.

Nothing else appearing, the complainant therefore will be entitled to take his decree, if he choose, for the sale of the land to enforce the payment of the amount allowed him by the jury in answer to issue No. 7; that is $2,340. If he refuse to so take his decree the judgment must be reversed, and the cause remanded for a new trial.

There are two other assignments of error, however, based on the following facts: On August 21, 1913, complainant filed a petition in bankruptcy. He did not schedule this demand as one existing against Peter Hooker. The latter was then living, as already stated,

and did not die until June 26, 1914, after the discharge was granted on February 24, 1914.

It is contended that complainant's rights, under the contract, against Peter Hooker were capable of assignment; that they should therefore have been scheduled; that the failure to schedule them, coupled with the oath made to the schedules that the list furnished therein contained a true statement of all of complainant's assets, afforded an inference against the complainant as to the truthfulness of the demand set up in the bill; that the facts stated also amounted to an estoppel against the complaint, since he could not lawfully be heard to assert in the present action what he had denied in his schedules; furthermore, that complainant could not recover because on adjudication of his bankruptcy the title to his contract, or his rights under the contract, passed to the trustee in bankruptcy, and he only could sue.

These various contentions are sound, if the contract rights in question were assignable at the time the petition was filed and adjudication made.

As to the first and second points, see *Grier* v. *Canada*, 119 Tenn.; 17, 107 S. W., 970; *Hamilton* v. *Zimmerman*, 5 Sneed (37 Tenn.), 39; *Cooley* v. *Steele*, 2 Head (39 Tenn.), 605; *Lee* v. *Calvert* (Ch. App.), 57 S. W., 627; *Allen* v. *Westbrook*, 16 Lea (84 Tenn.), 251; *Stephenson* v. *Walker*, 8 Baxt. (67 Tenn.), 289; *Chilton* v. *Scruggs* 5 Lea (73 Tenn.), 308; *Stillman* v. *Stillman*, 7 Baxt. (76 Tenn.), 175. As to the third point, see *First National Bank at Jacksboro* v. *Lasater*,

196 U. S., 115, 25 Sup. Ct., 206, 49 L. Ed., p. 408; *Rand* v. *Iowa Central R. R. Co.,* 96 App. Div., 413, 89 N. Y. Supp., 212.

The determinative question is whether the complainant's rights were assignable at the time he made his schedules. In order to decide this question we must briefly examine the legal nature of these rights.

In *Goodloe* v. *Goodloe,* 116 Tenn., 252, 92 S. W., 767, 6 L. R. A. (N. S.), 703, 8 Ann. Cas., 112, and *Green* v. *Orgain* (Ch. App.), 46 S. W., 477, it was held that where such a contract was made and the person who promised to make a deed or a will failed to do so, the party who contracted with him can recover on a *quantum meruit* the value of the services he performed as consideration for the contract.

Were complainant's rights of such a contingent nature that they were not capable of assignment when he made his schedules? We think they were. They were based on the contingency of his serving as a son during the residue of the life of Peter Hooker. It could not be known before the death of the latter whether complainant would survive him, or whether, if he did survive, he would continue to perform the services, and give the care and attention of a son to a father, or whether he would fail so to do through inability, physical or mental, or through his own purpose. Moreover, it could not be known whether Peter Hooker would comply with the contract and make a deed or will, or would die without having made either. Therefore, at most, complainant had an expectancy

dependent upon the contingencies indicated. All he could have done would have been to make a contract to assign when his rights should accrue at the death of Peter Hooker, whatever they might be. *Taylor* v. *Swafford,* 122 Tenn., 303, 312, 123 S. W., 350, 25 L. R. A. (N. S.), 442. Such a right to make a contract is not required to be entered upon a schedule in bankruptcy as an asset for creditors.

On the grounds stated, we overrule complainant's assignments Nos. 16, 17, and 18.

As we have already indicated, complainant, if he choose, may cause to be entered a decree modifying the chancellor's decree so as to adjudge the indebtedness of the estate to him at $2,340, and ordering a sale of the land for the payment thereof. If he do not so consent, the decree will be reversed, and the cause remanded for a new trial.

All of the costs will be equally divided between complainant and defendants.