GORE *v.* HOWARD.

(*Nashville.* March 23, 1895.)

1. WILLS. *Estoppel to contest.*

An heir apparent, who, for a valuable consideration, relinquishes to the ancestor his entire expectancy in the latter's estate, is estopped, while he retains the benefit received and his release remains in full force, to institute a contest over the ancestor's will. (*Post, pp. 578–586.*)

Cases cited and approved: Wynn *v.* Spiers, 7 Hum., 394; Bank *v.* Nelson, 3 Head, 634; Cornwell *v.* Cornwell, 11 Hum., 485; Read *v.* Mosby, 87 Tenn., 765; Fitzgerald *v.* Vestal, 4 Sneed, 257; Steele *v.* Frierson, 85 Tenn., 430; 63 Pa. St., 443.

2. EVIDENCE. *Erroneous exclusion.*

Where a paper purporting to be petitioner's release of his entire expectancy in his ancestor's estate is pleaded to estop him to contest the ancestor's will, it is error to exclude evidence tending to show that petitioner did not sign the release. (*Post, p. 587.*)

---

FROM OVERTON.

---

Appeal in error from Circuit Court of Overton County. W. M. HAMMOCK, J.

W. W. GOODPASTURE, W. W. WINDLE, and JOSHUA HAILE for Plaintiffs.

J. A. BARNES, and G. B. MURRAY for Defendants.

37—10 P

McAlister, J. The question presented for determination in this case is whether the petitioners are entitled to have set aside the probate of the will of John Maxwell, deceased, and contest the same upon an issue of *devisavit vel non.* The Circuit Judge was of the opinion that petitioners having, in the lifetime of the testator, released and relinquished to him, for a valuable consideration, all their interest or right of expectancy in his estate, have now no such legal status with reference thereto as would entitle them to wage such a contest.

The testator, John Maxwell, departed this life in May, 1891, after having made and published his last will and testament, which was duly probated in common form in the County Court of Overton County. The testator had been twice married, and left surviving him a widow and six children, three of whom were the issue of the first marriage. By the terms of his will, the testator devised his entire estate, real and personal, to his widow, Lily Ann Maxwell, and her three children, and no provision was made for either of the three children by the first marriage. These three children, it is claimed, had been provided for in the lifetime of the testator, and had relinquished all further interest in his estate. It appears that after the said John Maxwell had intermarried with his second wife, and three children had been born to them, he divided between the three children of his first marriage all of his estate which he had accumulated up to the date of his second

marriage. Each of his three children by the first marriage executed to him a written instrument similar in form to that executed by Robert and Margaret Winton, which is in words and figures following, to wit:

"We, Robert M. Winton and Margaret Winton, his wife, for and in consideration of the sum of $600 advanced by John Maxwell to me, the said Margaret Winton, and applied, to wit, to the purchase of the tract of land on which we now live, and the further consideration of $400 advanced by the said John Maxwell to his daughter, the said Margaret Winton, which is applied towards the purchase of a tract of land bought of John A. Roberts, the title to which is to be made to the said Margaret Winton, and in consideration of other advancements made by the said John Maxwell to said Margaret, not herein specified: We, the said Margaret Winton and Robert M. Winton, her husband, do agree and bind ourselves to accept the several amounts of money and property advanced to the said Margaret, aforesaid, in full satisfaction of all their interest, or the interest of the said Margaret which she now has or may hereafter have in the estate of her father, the said John Maxwell, either in his lifetime or after his death, it being understood by us, and agreed, that the amounts we have received is all that we are ever to receive from the said John Maxwell or his estate, either during his life or after his death; that the said Margaret Winton is to

receive nothing more either as heir or distributee of her said father, John Maxwell. Given under our hands, this third day of May, 1877.

"ROBERT M. WINTON,

"MARGARET WINTON."

This instrument was duly acknowledged in proper form before the County Court Clerk of Overton County, Tennessee, and the privy examination of the married woman was taken in the manner prescribed by law. As already stated, a similar instrument and obligation was executed by the two remaining children of the first marriage.

The will of John Maxwell was probated on the eighteenth of March, 1893, and soon thereafter the three children of the first marriage filed their petition in the County Court of Overton County, seeking to set aside the probate of said will, and praying that said instrument be certified to the Circuit Court for an issue of *devisavit vel non*. The executor and devisees under the will filed an answer to said petition, in which they averred that petitioners, by reason of the releases executed by them in the lifetime of the testator, had relinquished all interest in the estate of John Maxwell, and had no such interest in said estate as would entitle them to contest the validity of said will. The defendants also insisted that the petitioners were estopped by said instruments to claim any interest in said estate. The County Court refused to set aside said probate, and dismissed the petition. On appeal, the Circuit Court

heard the cause upon a transcript of the record of the County Court, upon consideration whereof the decree of the County Court was affirmed. Petitioners appealed to this Court, and have assigned errors.

The cardinal inquiry arising in this case, is in respect to the validity of the releases executed by the children of the first marriage. If said instruments are of binding efficacy, the petitioners had no such interest in the estate of the testator as would entitle them to maintain a proceeding to set aside his will. It is well settled that such persons only as would be entitled to share in the real or personal estate of the deceased if there were no will, or if the will were set aside, are entitled to impeach its validity. Pritchard. on Wills and Administration, Sec. 339; *Wynn* v. *Spiers*, 7 Hum.

A stranger will not be permitted to contest the will or disturb the existing probate. A kinsman who is not nearest of kin and who would take nothing under the statutes of distribution if there were no will, cannot contest it. A creditor of an heir of the testator cannot have an issue made to try the validity of the will or in any other way, directly or collaterally, attack the probate in common form in the County Court. *Bank of Tennessee* v. *Nelson*, 3· Head, 634. Nor can a grandson of the testator contest the will, unless it appears that his own father is dead. *Cornwell* v. *Cornwell*, 11 Hum., 485.

The general principle is, therefore, well settled

'that whoever appears to contest a will is bound, if required, to show his interest and right to make the contest. Pritchard on Wills and Administration, Sec. 339. It is insisted that, if Maxwell had died intestate, or his last will and testament were successfully impeached, petitioners have, for a valuable consideration, surrendered all interest in the estate, and are thereby precluded from any participation therein. It is insisted, however, on behalf of petitioners, that said releases are inoperative and void because in contravention of public policy, and for the further reason that petitioners, at the time they were signed, were laboring under the disability of coverture. Counsel for petitioners cite in support of this contention *Read* v. *Mosby*, 3 Pick. In that case it was decided that an assignment, without consideration, of his estate in expectancy by an insolvent heir apparent is fraudulent as to existing creditors, and will be set aside at their instance. In that case it appeared that the assignment under which Mrs. Mosby claimed was made by an insolvent debtor. It was not made for a valuable consideration, and simply amounted to a settlement upon the wife by a husband unable, with justice to his creditors, to make such a conveyance. In the case of *Fitzgerald* v. *Vestal*, 4 Sneed, 257, it was held by this Court that a bare expectancy—as, the anticipated interest of an heir in his ancestor's estate—is the subject of a valid contract of sale, and although a Court of Equity scrutinizes such transactions with jealousy and

caution, yet, when the transaction is *bona fide*, and the consideration fair, they will be enforced as an assignment of the property when the. right of the vendor attaches.    In the later case of *Steele et al.* v. *Frierson et al.*, 1 Pick., 430, the former case was reaffirmed, the Court holding that the sale or assignment in good faith and for a valuable consideration, of the estate in expectancy of an heir apparent, is valid, and will be upheld and enforced in Courts of Equity.    It was further held that such a purchaser of the estate in expectancy of an heir apparent takes it subject to advancements made to the heir, but not subject to debts due from the heir to the testator's estate.    It has already been seen that the releases in this case were executed in good faith and upon a valuable consideration.    It is shown that at the time these releases were made the testator divided among the children of his first marriage all of his estate which he had acquired up to the date of his second marriage, and that these children accepted the money and went into the use and occupation of the land.

There has been no offer on the part of these children to return the property received by them in pursuance of the arrangement with their father; and, while they do not attempt to disaffirm these contracts, as we shall presently see, they still hold on to the consideration.

Pursuing further the question of law already discussed, we perceive no distinction in principle be-

tween the facts presented in the cases of *Fitzgerald* v. *Vestal*, 4 Sneed, and *Steele* v. *Frierson*, in 1 Pickle, and the facts of the case now being adjudged, except that the release in this case was made to the testator himself, and not to any person capable of taking after his death.

A similar question arose in a case in New York —*Kinyon* v. *Kinyon*. In that case the ancestor had conveyed to his four sons all of his real estate, a portion to each son. He conveyed to his son, Albert Kinyon, what was known as the home farm, consisting of about ninety-one acres of land. The son, before the delivery of the deed, executed and acknowledged an instrument, in writing, which, after reciting the deed from his father, stipulated, viz.: "Now therefore, in consideration of such conveyance being made and given to me as aforesaid, I do hereby release, renounce, and set over to my said father all my right, title, claim, and interest whatsoever to all and every part or share in and to his real and personal estate which I may or will have at or upon his death in expectancy, by reason of being a devisee or legatee under any will he has made, or may hereafter make, or by reason of being one of his next of kin, accepting the land herein conveyed to me by him this day." The deed was thereupon delivered by the father to the son, and the son went into the use and occupation of the farm. Upon the death of the ancestor intestate, the question arose whether the son should

have a distributive share of his father's estate, or whether he was barred from such share by the instrument of release. It was held by the Court that the instrument executed by the defendant is valid in equity, and would be enforced as an assignment or release, although made to the ancestor himself, and not to any person capable of taking after his death. The Court cited the case of *Power's Appeal*, 63 Penn. St., 443, in which it was held: "An heir or an expectant devisee or legatee may, in the lifetime of the testator or intestate, in equity, sell or assign his expectant or contingent interest, whatever it may turn out to be, upon the death of the person from whom it may come, which contract, if made upon a valuable consideration, a Court of Equity will enforce. If so, there can be no reason," says the Court, "why a father should not make such a contract with a son which should entirely bar all his claim as an heir to any part of his parent's estate."

The conclusions reached by the Court in the New York case were as follows, to wit: First, that the deed and contract, as between the parties to them, are to be construed together, as constituting one transaction. Second, that the defendant is estopped from questioning the validity of the instrument given by him and from refusing to carry out its provisions, and is estopped from asserting any rights, claim, or interest in the property of the deceased. Third, that, in equity, the instrument is valid and effectual

for the purpose for which it was executed, and is binding on the defendant. *Kinyon* v. *Kinyon*, Vol. XXVII., 627–631.

It is argued that, while such assignments may be protected and enforced in Courts of Equity, that, at law, they are held absolutely void, for the reason there was no title or property interest upon which it could operate. *Read* v. *Mosby*, 3 Pickle, 765. While the proposition is true as applied to the enforcement of such assignments for the recovery of the specific property, it is also true that an estoppel may arise out of such transactions which may be successfully interposed in a Court of Law. It appears from the record that the defendants, distributees, executed those releases, and, as a consideration for executing them, accepted large sums of money from their ancestor, the testator. They have taken no steps to cancel these agreements nor offered to return the money. The defendants still hold on to the fruits of the transaction and yet seek to disaffirm the contract. If they wish to say they were defrauded or overreached in the transaction, and to be relieved from it, they must ask that the whole transaction be set aside, returning what they have received, or, at least, offering to do so. The testator was undoubtedly misled by these petitioners to his prejudice, being induced, by their promise and agreement, to part with large sums, which they appropriated and have enjoyed. We think that, under

these circumstances, they are now estopped from contesting this will.

The last assignment of error is based upon the action of the Circuit Judge in rejecting certain evidence. Counsel for petitioners offered to prove, by Mitchell Winton and his wife, Margaret Winton, that the latter had never signed the release, or authorized anyone to sign it for her. The Circuit Judge refused to permit the introduction of this evidence. This action was clearly erroneous, and, for this error, the judgment must be reversed as to Mitchell Winton and wife, and remanded for a new trial.