Bowers v. McGavock.

GEORGE F. BOWERS *et al. v.* MYRA M'GAVOCK, Admx.,
*et al.*

(*Nashville.   December Term, 1904.*)

1. **CHANCERY PLEADING AND PRACTICE.** Facts in answer
   taken to be true, where cause is set down for hearing upon
   bill and answer.
   Where, on motion of complainant, a cause is set down for hearing
   upon bill and answer and is heard thereon, the statements of
   the answer as to all matters of fact must be taken as true.
   (*Post, pp. 440, 452.*)

   Case cited and approved:   Rodgers v. Rodgers, 6 Heis., 495.

2. **WILLS.** Validity can be contested by none except such as
   would be entitled to an interest in testator's property in case
   of invalidity.
   No one can question the validity of a will or any provision of
   it, unless he stands in such relation to the testator that, in
   the event the provision is invalid, he will be entitled, under the
   law to an interest in the property involved in the controverted
   provision.   (*Post, pp. 450, 451.*)

   Cases cited and approved:   Wynne v. Spiers, 7 Hum., 407; Corn-
   well v. Cornwell, 11 Hum., 485; Bank v. Nelson, 3 Head, 634;
   Gore v. Howard, 94 Tenn., 581; Ligon v. Hawkes, 110 Tenn.,
   514, 516, 523.

3. **SAME.** Widow's election to take under husband's will is
   binding on her heirs, distributees, and representatives.
   Where the widow of testator fails to dissent from his will, but
   affirmatively elects to take thereunder, and seeks its execu-
   tion, her heirs at law and distributees, who are not heirs at law
   and distributees of the testator, have no such interest as en-

Bowers v. McGavock.

titles them to contest the validity of the testator's will; for the election by the widow to take under the will of her deceased husband is binding on her representatives. (*Post, pp.* 451- 456.)

Cases cited and disapproved: Mong v. Roush, 29 W. Va., 119; State v. Holmes, 115 Mich., 456.

**4. SAME. Same. Widow's right of election is personal and does not pass to her representatives or heirs.**
The right of election to take under the will of her husband or under the statute is personal to the widow and does not pass to her representatives or heirs; and especially is this so, where the widow has made her election to take under the will, and declined and refused to take under the statute. (*Post, pp.* 456, 457.)

Cases cited and approved: Cannon v. Apperson, 14 Lea, 572; Storrs v. Hospital (Ill.), 54 N. E., 185, 72 Am. St. Rep., 211; Deslondes v. New Orleans, 14 La. Ann., 552.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County.—JOHN ALLISON, Chancellor.

CHARLES C. TRABUE and GRAFTON GREEN, for complainants.

JOHN J. VERTREES and TURLEY & TURLEY, for defendants.

MR. JUSTICE WILKES delivered the opinion of the Court.

This bill is brought by a portion of the heirs and distributees of Mrs. Harriet Goodwyn, seeking to invalidate certain provisions of the will of her husband, William A. Goodwyn, upon the ground that the charitable trusts thereby sought to be created are invalid and void. There was an answer filed by the administratrix of Mrs. Goodwyn, the executor of William A. Good'wyn, and the trustees and commissioners appointed to execute the trust. The cause was, on motion of complainants, set down for hearing upon bill and answer, both of which are full and explicit.

The result is that the statements of the answer as to all matters of fact must be taken as true. *Rodgers v. Rodgers,* 6 Heisk., 495.

The facts, so far as necessary to be stated, are that William A. Goodwyn died on the 13th of October, 1898, in Nashville, Tenn., after making a last will and testament, in which he disposed of a considerable estate, about $400,000 of which is involved in this litigation.

This will, executed May 18, 1893, provided most liberally for the testator's wife, and gave bequests to his half brothers and sisters, his nephews, a niece, and his wife's sister. Ten thousand dollars were also given to the University of the South, at Sewanee, the income of which was to be used alone for the education of young men too poor to pay for themselves; and none of these provisions of the will are questioned.

The contest arises over the provisions of sections 14 and 8 of the will, and they are as follows:

"Section 14. All the balance of my estate, real, personal, or mixed, including at the death of Myra McGavock that given to her in section 11th, during her life (excepting that part of the personalty or mixed which I allow her to will or give away), I give, after death of my wife, to the State of Tennessee as trustee for the following uses and purposes, and none other. I will and desire that the State, upon the nomination of the governor, to be confirmed by the senate, appoint three commissioners, to be known as 'Commissioners of Goodwyn Institute,' and said commissioners will hold their office for four years, and until their successors are appointed and qualified; the said commissioners are to purchase a suitable lot in the city of Memphis (now taxing district), in Shelby county, Tennessee, and erect suitable buildings thereon, expending therefor such parts of this gift as to them may seem proper, and retaining the balance for library and apparatus expenses and endowment fund. They are to receive no compensation for their services, and are required to render biennial reports and accounts to the governor of all moneys received or spent, and their management of said trust, or its funds is to be at all times open to inquiry by the legislature of the State, under the fostering care of which this institution is placed. The title to the lot purchased and all other property, shall be in the name of the State, for the purposes of this trust solely. The building or

buildings to be erected shall be satisfactory to said commissioners, but such portion thereof as can be shall be rented for the purpose of obtaining a revenue for the maintenance of a public library and public lectures. One part of said building shall be devoted to lectures, and another part to a library, and the use of the library shall be free to all, under the rules and regulations to be made by said commissioners; and the lectures shall be free, and the whole will be for instruction, and not for entertainment merely. All of the rents, profits, and income derived shall be faithfully used and applied, together with any part of this legacy not used in purchasing and building (after payment of repairs, expenses, insurance, etc.), to pay lecturers, and the purchase of, books, charts, maps, and apparatus. No part of the building is to be used for political gatherings, but when the lecture hall is not used otherwise, it may be rented for musical concerts, art exhibitions, or other purposes likely to elevate public morals, and taste. I request the governor to nominate, and the senate to confirm, as the first commissioners, my friends, Samuel P. Read, Bedford M. Estes, and Rufus Lawrence Coffin, all of Memphis, Tennessee, if living and will accept. If these do not for any reason accept, then he nominate three gentlemen of Memphis of the highest integrity, purity, and responsibility. I estimate that the amount which will go to the State as trustee, under this gift, and supplemented by the additional amount which will revert to my general estate, and thus to the State, after the

Bowers v. McGavock.

death of Myra McGavock as left to her in section 11, will amount to a large sum, and ample for the purpose intended. And every year that I live there will probably be more added, for I intend that all I may die possessed of, not otherwise disposed of by my will, shall go for this worthy purpose.

"My whole wish and desire as respects this 'Goodwyn Institute' is to afford to the future youths who may desire information upon such practical and useful subjects as will be beneficial in life. My reason for locating it in Memphis is, it was there I spent much of my life in the happy circle of wife and children. The latter sleep near her borders, as I and my wife expect to do when we die. Here I made the friends of my early life many of them are dead, but their descendants, many of them remain in Memphis, and were playmates of my children, and to them or their descendants I hope this gift may be of great benefit. This legacy for the benefit of my old home has long been thought of by myself and wife, and took shape in a will written by me in November, 1887, and now repeated. It became necessary to write this will on account of necessary changes, and to destroy that of 1887. And I mention this fact in order that my old friends of Memphis may know that I have long cherished this idea.

"If the State of Tennessee should refuse to take charge of this trust, then I direct my executors to carry out my wishes as expressed, as to them may seem best, after consultation with my friends, Judge E. H. East,

John M. Lea, and J. M. Dickinson, all of Nashville, Tennessee. I will that the portraits of my wife and myself, and the pictures of my children, now in my dwelling in Nashville, be hung in this 'Goodwyn Institute,' to which I will them.

"Section 8. I will to the commissioners of 'Goodwyn Institute,' and to their successors, mentioned hereafter, one thousand dollars, which shall be invested only in first-class bonds, or mortgage on real estate, the interest of which only shall be always used to take care of and embellish my two lots, Nos. 132 and 133, situated on Fowler's Hill, in Elmwood Cemetery, Memphis, Tennessee, where now lie the bodies of my nine children, and where my wife and I hope to be buried when we die."

Mrs. Goodwyn participated in and approved of this long-cherished plan of Mr. Goodwyn's to establish this institute at Memphis for his will states that:

"This legacy for the benefit of my old home has long been thought of by myself and wife, and took shape in a will written by me in November, 1887, and now repeated."

He adds in another part of his will as follows:

"This legacy for the benefit of my old home has long been thought of by myself and wife and took shape in a will written by me in November, 1887, and now repeated."

Mrs. Goodwyn, the widow, the defendant Miss Myra McGavock, her sister, and the defendant Mr. Joseph H. Thompson were named as executors, and qualified as

such on the 24th day of October, 1898, when the will was probated.  Mrs. Goodwyn acted as executrix for more than four  years, and until her death, in March, 1903.

Upon her death, defendant Myra McGavock, her sister, qualified as administratrix of her estate.

The complainants, who are a part of Mrs. Harriet R. Goodwyn's heirs, requested Miss McGavock, the administratrix, to bring this suit, but she refused.  They then requested her to resign, so that some one could be appointed who would sue, but she refused to resign.  Miss McGavock's reasons for declining to sue or to resign are set forth in the answer of all the defendants, in these words:

"Mrs. Goodwyn was her sister, and for many years she had lived with Mr. and Mrs. Goodwyn as a member of the family, in their home, and she continued to live with her sister after Mr. Goodwyn's death, until Mrs. Goodwyn herself died, in 1903.  Mr. Goodwyn had provided generously for her in his will, and her sister, Mrs. Goodwyn, gave her property of great value during her life.  This respondent knew the wishes and desires of Mrs. Goodwyn touching Goodwyn Institute; knew that she had elected to abide the will because she approved of its provisions, and desired the institute to be established, as Mr. Goodwyn contemplated; because she knew that Mrs. Goodwyn did not and would not take any steps to defeat the will of Mr. Goodwyn, or to de-

prive the institute which it contemplated of the benefit of the provisions which it made."

Also that:

"Mrs. Goodwyn qualified as executrix of this will in October, 1898, and continued to act as such until her death, in March, 1903. She not only executed and carried out this will as executrix, but she assented to and accepted its provisions as widow. She commended and approved it, and elected to accept and abide it. With full knowledge of its provisions and terms, she elected to accept and approve it and to let it stand; and she refused and declined to dissent from it, or to contest it, or to assail any of its provisions or terms."

The complainants exhibited their bill on the 12th day of April, 1904. They assail the trust for Goodwyn Institute on numerous grounds.

They say in the bill that no sufficient provision is made for a trustee capable of executing the trust; that the court of chancery has "no authority" to administer a charitable trust where no sufficient trustee is designated; that the purposes of the trust are "indefinite;" that an indefinite and unascertainable portion of the purposes of the trust are "not charitable;" that the intended beneficiaries are "indefinite;" that the State has "no power" to accept a trust which is "local," and not a governmental institution; that the State has "refused" to accept the trust; that the consent of all the persons named, viz., Mrs. Goodwyn, Miss McGavock, Mr. Thompson, Judge Lea,

Judge East, and Judge Dickinson, must be had, in the event of the State's refusal to accept, and that this has become "impossible" by reason of the death of Mrs. Goodwyn and Judge Lea; and that the bequest to keep up the graves in Elmwood Cemetery is a perpetuity and void.

The defendants, the executors of Mr. Goodwyn, the administratrix of Mrs. Goodwyn, and the commissioners of Goodwyn Institute, in their answer, deny all these propositions of the complainants. They say that it is a good, valid, definite, certain, charitable trust, and that the State has power to accept and did accept; that, in the event of the refusal of the State to accept, the executors can appeal to the court of chancery to execute the trust and that it has jurisdiction to do so; and that the bequest for the cemetery is not void, but valid.

After the death of Mr. Goodwyn, and after the death thereafter of Mrs. Goodwyn, the general assembly of the State of Tennessee passed an act which was approved April 15, 1903, and which is designated as chapter 353, p. 1068, of the Acts of 1903, and which act, after reciting the terms of the will *in haec verba,* and the death of Mrs. Goodwyn by way of preamble, proceeds as follows:

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that the State of Tennessee accept the said trust as set forth in said will, and that the governor of the State is authorized and required to nominate and appoint three commissioners, to be con-

firmed by the senate, to be known as 'Commissioners of
the Goodwyn Institute,' in compliance with the request
of the said William A. Goodwyn, and in conformity
with the provisions set forth and declared in his said
last will and testament.

"Sec. 2. Be it further enacted, that at the end of each
four years, as designated in said will, the governor of
the State is authorized and required to nominate
and appoint three successors to the commissioners
originally nominated, appointed and confirmed, which
successors shall also be confirmed by the senate,
and in like manner, if any vacancy occurs in said com-
mission during any period of four years by the death,
resignation, or removal from the State of any one of
said commissioners, the governor may fill such vacancy
for the unexpired term of such commissioner by ap-
pointment, subject to confirmation by the senate; that
by the acceptance of the trust created by the aforesaid
will, the State of Tennessee does not assume the cus-
tody of the funds and property thereby devised and be-
queathed; neither does it assume responsibility for the
care and preservation thereof; and the executors of the
said testator are accordingly authorized, empowered
and directed to pay over the funds and moneys to be
paid over, pursuant to the terms of the said will, to the
commissioners hereafter named and appointed by the
governor as the commissioners of the Goodwyn Insti-
tute, instead of to the State of Tennessee.

"Sec. 3. Be it further enacted, that this act take effect

from and after its passage, the public welfare requiring it."

Defendants Read, Pepper, and Goodbar were nominated and appointed as trustees of the Goodwyn Institute under section 14 of the will, hereinabove quoted, and have in their possession certain of the property intended to be used for the establishment of said trust. Defendant Napoleon Hill sold to the commissioners, for the purpose of said trust, certain property in Memphis, for which he was paid out of said trust fund the sum of $75,000.

The chancellor held as follows:

First.    That the trust created by the will of William A. Goodwyn for Goodwyn Institute is a public charity, and is a legal and valid trust.

Second.    That the State of Tennessee has, by the act of its general assembly which is chapter 353, p. 1068, of the Session Acts of 1903, accepted the said trust.

Third.    That the complainants are estopped to set up any claim to the funds involved in this case.

Fourth.    In view of the fact that they are estopped, it is unnecessary to pass upon the validity of the bequest of $1,000 to the trustees for the care and keeping of the Goodwyn lot in Elmwood Cemetery.

The court of chancery appeals reached the same conclusion as was reached by the chancellor, but on different ground; and complainants have appealed to

this court, and assigned virtually the same errors assigned before the court of chancery appeals.

The first question which confronts us is whether complainants occupy such relation that they can question the validity of the provisions of the will of William A. Goodwyn.

As before stated, they are a part of the distributees or next of kin of Harriet A. Goodwyn.

They are not heirs, distributees, or next of kin of William A. Goodwyn. They are in nowise related to him, and there is no privity whatever of blood or estate between them.

It has been held by this court that a stranger will not be permitted to contest the execution of a will, nor will a kinsman, who is not next of kin, and who could take nothing under the statute of distribution. *Wynne* v. *Spiers,* 7 Humph., 407; *Gore* v. *Howard,* 94 Tenn., 581, 30 S. W., 730; *Bank of Tennessee* v. *Nelson,* 3 Head, 634.

Thus a grandson cannot contest unless his own father is dead. *Cornwell* v. *Cornwell,* 11 Humph., 485.

The latest utterance upon this subject is in *Ligon* v. *Hawkes,* 110 Tenn., 514, 75 S. W., 1072, in which it is said:

"One who is not an heir or distributee of the testator at the time of his death, and would not have been if those under whom he claims had died before the testator, has no standing in court to resist the probate of a will, or have a probate in common form set aside for purposes of a contest."

Accordingly it was held in that case that the father
of a granddaughter, being a stranger in blood to the tes-
tatrix, and being wholly incapable of inheriting from
her, even if the grandmother had been dead at the death
of the testator, had no such interest as entitled him to
have the probate in common form set aside, or to ques-
tion the testamentary capacity of the testatrix. *Ligon*
v. *Hawkes,* 110 Tenn., 516, 523, 75 S. W., 1072.

It is said that the contest of a will is different from
an attack upon the validity, as a matter of law, of some
or all of its provisions; and this is true, in a sense.

The contest of a will upon an issue of *devisavit vel
non* questions the execution of a will, and the matter
involved is whether the will is or is not the last will and
testament of the testator, while the attack upon the va-
lidity of its provisions concedes its execution, but ques-
tions the legality of such provisions.

But the principle involved in the two cases is the
same, so far as the right of a party to make the contro-
versy is concerned.

No one can question the validity of a will, or any
provision in it, unless he stands in such relation to the
testator that, in the event the provision is invalid, he
will be entitled to an interest in the property involved
in the controverted provision.

But it is said that, if the provisions of the will of Wil-
liam A. Goodwyn are invalid, the property covered by
it passed to Mrs. Harriet A. Goodwyn, his widow, and
through her to complainants, as her next of kin.

The answer in this case, which as we have before found, must be conceded to speak the facts, states that Mrs. Goodwyn not only accepted this will, but executed it. She not only executed its provisions as executrix, but took under them as widow. She commended and approved it, and elected to accept it and abide by it, with full knowledge of its terms and provisions, and refused and declined to dissent from it, or to contest it, or to assail any of its terms and provisions.

Under this statement, she did not merely acquiesce in it, but actively participated in carrying out the plan and scheme of her husband, to which she had cheerfully assented before his death.

At the death of William A. Goodwyn, his widow had her election to take under his will, or to dissent therefrom and take under the statute.

In the former event, she would be entitled to what the will gave her. In the latter, she would be entitled to take her one-third interest in the personal estate, there being no children or their descendants. The other two-thirds, if the will was invalid, would have gone to the next of kin of William A. Goodwyn.

Having elected to take under the will, she had no other interest than that given her by the will—that is, none under the statute; and complainants could claim nothing under her, since she only took a life estate under the will. Nor could they, even if the will were invalid, claim the two-thirds interest, inasmuch as that would

have gone to the next of kin of William A. Goodwyn, and complainants do not occupy that position.

In other words, after her election she was estopped to claim any interest except under the will, and complainants could claim nothing under her or under William A. Goodwyn.

In making this statement, we have assumed that, if the charitable trust was void, the property would at once go back to the next of kin of William A. Goodwyn. Complainants concede this proposition, and cite in support of it *Clark* v. *Cammann,* 160 N. Y., 315, 54 N. E., 709; Page on Wills, section 744.

But their insistence is that Mrs. Goodwyn was next of kin under the law of distribution.

This, however, would not be true, if the will were otherwise valid—that is, valid as to its other provisions—since, in that event, if she dissented, she would be entitled to only one-third, and the remaining two-thirds would go to the heirs of William A. Goodwyn, and they would be the parties entitled to take under the statute of distribution.

Ordinarily lapsed legacies pass to the residuary legatee, if the residuary clause is general; but, when the residuary clause itself is invalid and lapses, the fund goes to the next of kin. 1 Jarman on Wills (5th Am. Ed.), 637, note, citing a large number of cases.

But suppose we treat the case as one from which the widow did not dissent from the will, and was therefore entitled, as distributee, to the entire personal estate.

In that event she would have taken it as next of kin, and was the only party, therefore, who could insist upon the invalidity of the will, and that as to this trust property the testator died intestate.

She made no such contention.   She made no claim as next of kin.   Whatever rights she may have had as next of kin she refused to accept, but took instead the provisions which the will made for her.   It can hardly be disputed that she had the election to do this, and that it was binding upon her representatives.

The estate, as next of kin, never vested in her.   She declined to take it.   It did not, therefore, need to be abandoned.

It then left, as the only question, whether the funds passed to the charity designated by the will, or passed to the next of kin (after the widow) of William A. Goodwyn.

It could never pass to her representatives, because it never vested in her.

Complainants rely upon the cases of *Mong* v. *Roush,* 29 W. Va., 119, 11 S. E., 906, and *State* v. *Holmes,* 115 Mich., 456, 73 N. W., 548, as sustaining their contention that, though Mrs. Goodwyn had not asserted any claim to the personal property, still they might do so, even after the lapse of many years.

In the case first named, a testator set apart $2,500 to be invested by his executors, and the interest to be paid over to the trustees of the Lutheran Church in Martinsburg, Va., and by the residuary clause all the balance

of his property was given to his widow. She lived twenty years, and made a will giving all her property to certain relatives. She never claimed the $2,500, nor referred to it in her will.

It was held that the bequest to the church was void; and by a divided court it was held that, unless the money was given to the next of kin of the widow, it would go to the trustees individually, which no one ever contemplated.

In *State* v. *Holmes*, 115 Mich., 456, 73 N. W., 548, the testator gave his lands and property to his wife for life, and after her death to the State of Michigan, on condition that it would accept it, and within five years build a charitable or educational institution on the land.

The State filed a bill to construe the will, and it was held that, as the condition to build was a condition subsequent, and not to be performed within a life or lives in being, it was void.

The grandson claimed the property on the theory that testator had died intestate, and that the widow had elected, by acquiescence, to take under the will, and hence could take nothing under the void will.

It was held that the grandson took only his share, and that the widow was not estopped by her acquiescence from taking her share.

Without commenting upon the reasoning or correctness of these decisions, they are to be clearly differentiated from the present case.

In each of these cases there was a mere acquiescence of the widow.

In neither did it appear that the widow affirmatively elected to take under the will, nor did either qualify as executrix and undertake to carry out the will.

So in each case there appears to have been mere acquiescence.

But in the present case Mrs. Goodwyn, according to the answer, deliberately renounced and declined all interest in the estate, except what the will gave her, for the very purpose of having the will executed, whether valid or void; and all in pursuance of her own and her husband's plans, purposes, and desire before his death.

She did not abandon any interest in the estate which she would have had under the statute, but declined to take any such interest, and none such ever vested in her, to be abandoned.

We are of the opinion that the right of election to take under the will or under the statute is personal to the widow, and does not pass to the representatives or heirs; and especially is this so when the widow has made her election to take under the will, and declined and refused to take under the statute. *Storrs* v. *St. Luke's Hospital* (Ill.), 54 N. E., 185, 72 Am. St. Rep., 211; *Deslondes* v. *New Orleans*, 14 La. Ann., 552; *Cannon* v. *Apperson*, 14 Lea, 572; 2 Underhill on Wills, section 473; 11 Am. & Eng. Ency. Law (2d Ed.), 109.

We are of opinion that complainants cannot bring in question the provisions of the will of William A. Good-

Bowers v. McGavock.

wyn, as his next of kin, because they do not occupy such relation; nor can they make such question as the next of kin of Mrs. Goodwyn, because the property never vested in her, except as the will provides, but was excluded by her renunciation and refusal to take, and the complainants are bound by such renunciation and refusal, as her representatives.

This precludes the consideration of the very interesting questions which have been so ably argued as to the validity of the trusts created by the will, and which the court of chancery appeals held to be valid.

It results that the bill of complainants must be dismissed, with costs.