State v. Lancaster.

STATE OF TENNESSEE *v.* GEORGE D. LANCASTER, *Exr.,*
*et al.**

(*Knoxville.* September Term, 1907.)

1. **WILLS.** **Executed by a person of unsound mind, or procured
by undue influence, is void; when determined by court.**

A will executed by an insane person or by a person of insufficient
mental capacity, or a will procured by undue influence, is not
merely voidable, but void; but the fact of unsoundness of
mind must be determined by a court in a proper proceeding.
(*Post, p.* 651.)

Case cited and distinguished: McDowell v. Morrell, 5· Lea,
278, 286.

2. **SAME.** **Probate in solemn form can only be set aside upon a
bill for fraud.**

When a will has been probated in solemn form, no question
of its invalidity can thereafter be raised, except by a bill filed
to set aside the judgment for fraud in its procurement, as any
other judgment may be set aside. (*Post, p.* 651.)

Case cited and approved: Keith v. Alger, 114 Tenn., 1.

3. **SAME.** **Probate in common form can only be set aside for
fraud or upon issue of devisavit vel non.**

When a will has been probated in common form only, it is
good as to all the world so long as the probate stands, and
no question of its invalidity can be raised, except by a bill
to set aside the judgment for fraud in its procurement, or by
· an issue of *devisavit vel non.* (*Post, pp.* 651, 652.)

Case cited and approved: Reeves v. Hager, 101 Tenn., ·712,
718-722.

*As to conclusiveness of probate of will, see note to Sly **v.**
Hunt, 21 L. R. A., 680.

State v. Lancaster.

4.  **SAME. Title acquired under will probated in common form is not affected by setting will aside, when.**

Title acquired in good faith under a will probated in common form cannot be disturbed, even if subsequently the probate be annulled, and the will set aside. (*Post, p.* 652.)

Case cited and approved:    Reeves v. Hager, 101 Tenn., 712, 718-722.

5.  **SAME. Bill in chancery by State for escheat, and to stay proceedings until contest of will can be made in regular way.**

The State may institute suit in the chancery court to have property conveyed and disposed of by a fraudulent will, that is, one executed by a person of insufficient capacity, or procured by undue influence, escheated to the State, and to obtain a stay of the suit and the proceedings, until a contest of the will to be directed by the chancellor, can be instituted in the county court, and carried to the circuit court, and conducted and determined in the regular way. (*Post, pp.* 643, 652-658.)

Code cited and construed:    Sec. 3826 (S.); sec. 2962 (M. & V.); sec. 2144a (T. & S.).

Cases cited and approved:    Bank v. Nelson, 3 Head, 635, 636; Simmons v. Leonard, 89 Tenn., 623; in re Broderick's Will, 21 Wall. (U. S.), 503, 509.

Cases cited and disapproved: State v. Allen, 2 Tenn. Chy., 42; Louisiana v. Ames, 23 La. Ann., 69; Hop v. State, 72 Tex., 281, 287.

6.  **SAME. State claiming an escheat may contest a will for fraud in procuring its execution.**

While ordinarily only those, directly interested as heirs or distributees in the estate can contest a will, yet third persons claiming an interest in the property, and the State claiming an escheat, may contest the will in the county and circuit courts on the ground of fraud, as where its execution was procured from one of unsound mind or by undue influence. (*Post, pp.* 643, 654-658.)

Cases cited, approved and distinguished:    Gore v. Howard, 94
Tenn., 577; Ligon v. Hawkes, 110 Tenn., 514, 520; Bowers v.
McGavock, 114 Tenn., 438.

7. **SAME. Same. Contested for fraud in suit in chancery by
State for escheat of the property, when.**

In a suit about property held under a will probated in common
form, the will may be attacked by the opposing party for
fraud in its procurement; and, therefore, in a suit in chancery
by the State for the escheat of property, alleged to have
been disposed of by will probated in common form, the court
has jurisdiction of the question whether the will was pro-
cured by fraud or by undue influence from a person of unsound
mind, and if the will is found to have been thus procured, it
may be declared ineffective as to the property in controversy,
and all the rights pertaining to the property and persons in-
volved may be adjudicated upon the merits in such suit, without
directing a contest to be made in the regular course. (*Post, pp.*
643, 658-662.

Code cited and construed:    Secs. 3929-3932 (S.); secs. 3037-3040
(M. & V.); secs. 2197-2200 (T. & S. and 1858).

Acts cited and construed:    Acts 1784, ch. 10, sec. 6.

Case cited and approved: Weatherhead v. Sewell, 9 Humph.,
271, 280, 281, 282, 301.

8. **SAME. Suit for escheat against personal representative
holding proceeds, and not against the purchasers of the
property.**

A suit in chancery by the State to have property conveyed by
a fraudulent will declared escheated to the State is properly
brought against the personal representative in possession of
the proceeds of the property sold, instead of the purchasers
of the property. (*Post, pp.* 643, 644, 652, 662.)

Case cited and approved:   Reeves v. Hager, 101 Tenn., 712, 718-
722.

State v. Lancaster.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. —T. M. McConnell, Chancellor.

Attorney-General Cates, District Attorney Whittaker, Brown & Spurlock, and T. C. Lattimore, for State.

A. W. Gaines and Pritchard & Sizer, for defendants.

Mr. Justice Neil delivered the opinion of the Court.

The bill in this case was filed for the purpose of having certain property declared escheat to the State, but was dismissed on demurrer, from which decree the complainant prayed and obtained an appeal to this court.

The bill alleges that one Ella C. White died in Hamilton county about December 25, 1904, without issue, and without any relatives entitled by the laws of descent to inherit the estate of which she died seized and possessed; that she owned at her death eight pieces of real estate specially mentioned in the bill, and also certain personal property described in the inventory of her estate filed by the defendant George D. Lancaster, as executor.

119 Tenn.—41

It is further alleged that about a month before her death Mrs. Ella C. White executed a will wherein the said George D. Lancaster was nominated as executor, and in this will she disposed of her estate in the following manner:

To each of the defendants Dr. H. Berlin, Rev. Thos. W. Tobin, Mrs. C. V. Brown, and her children, Edith Brown and Benjamin Brown, she gave certain sums of money, and the residue of her estate to defendant the Sisters of St. Dominick, and authorized the executor to sell and dispose of all of the estate and distribute the proceeds among the parties just mentioned.

It is further alleged that at the time this will was executed the testatrix was not of sound mind and disposing memory, and that the will was also procured from her by undue influence, and was without effect to convey title; that the said will was, however, probated in common form; and that the executor therein named took out letters testamentary, and has since been engaged in the administration of the estate, and has sold and reduced to money the greater portion, if not all, of the estate, and now has the proceeds in his hands ready for distribution under, and in accordance with, the terms of the will.

It is further alleged that the defendants Mrs. Bridget M. Brosnon, John W. White, Mrs. Ella T. McDermott, Julia Kerney, Katherine Kerney, Arthur W. White, Mrs. Ella McHale Fineran, Edward McHale, Thomas McHale, William McHale, and Joe McHale are the broth-

ers and sisters, nephews and nieces, respectively, of William P. White, the husband of the said Ella C. White, who predeceased his wife; that as such nephews and nieces of William P. White they are setting up claim to said property by virtue of some alleged will executed in their favor by said Ella C. White. Complainant charges that, if any such will was in fact executed, the said Ella C. White was of unsound mind, and that the same was procured by undue influence.

The bill prayed for process for the persons mentioned, and that the title of the property not disposed of be decreed to the complainant, and also the proceeds of that disposed of. The defendants who are described above as the nephews and nieces of William P. White filed a demurrer setting forth the following objections to the bill:

First, that the bill alleges the fact that Mrs White died testate, and this allegation could not be avoided by the further allegation that she was mentally incapable at the time the will was executed, or was under the effect of undue influence; second, that it appears from the face of the bill that it is a proceeding to contest a will, whereas, the court of chancery has no power to entertain such a controversy, and the complainant no right to institute one; third, because the bill seeks to reach the proceeds of the sales in the hands of the executor, while complainant's recourse, if any it has, is against the property itself, left by the decedent, and that

the present holders of the property which has been sold are not made parties to the suit.

The demurrer was incorporated in the answer, but was first called to the attention of the court, and in the view we take of the case it is unnecessary to consider the questions made upon the answer.

An answer was filed by George D. Lancaster and Dr. H. Berlin and other persons mentioned with him, but no question arises upon this branch of the case. The bill having been dismissed on demurrer, the question is simply whether a cause of action is stated upon the face of the bill.

Our statutory provisions upon the law of escheats are contained in sections 3825 to 3837, inclusive, of Shannon's Code. These provisions, so far as necessary to be quoted in order to give a general view of the subject, are as follows:

Section 3825 provides that "the estate, real and personal, of any person dying intestate within this State, without issue, and leaving no relatives entitled by the law of descent to his estate, shall go to the common school fund." A subsequent part of this section contains a provision in favor of the widow which need not be specially mentioned here.

Section 3826 reads: "It shall be the duty of the district attorney in all cases in which he has a good right to believe an escheat has occurred in his district, to file a bill in the chancery court of the county wherein the land so escheated may lie, in the name of the State of

State v. Lancaster.

Tennessee, and without security, to have the same declared escheated."

Section 3827: "Besides the State of Tennessee as complainant, said attorney shall make parties defendant to said bill the personal representatives of the deceased, and all other persons who are in possession, or in any manner or way claim an interest in or to such property; and if such parties are residents of the State of Tennessee, they shall be served with process; if nonresidents, shall be made parties by publication, according to law."

The next section provides that, in addition to the classes of defendants just named, there shall be made a publication for thirty days in a newspaper published in the county, or if no newspaper be published in the county, then the nearest newspaper so published, calling upon unknown heirs of such deceased person, "and all persons claiming under him or her in any manner or way whatever, to enter his, her or their appearance as defendants to said bill or suit, and all persons having an interest in the same may come into court and defend the same according to the rules of said court."

The next section concerns the fee of the district attorney.

The next section provides that the same proceedings shall be instituted against the personal representative and his sureties, after the lapse of two years, for any balance of personal estate in his possession, and upon the same terms and conditions as those above men-

tioned, as well as against any other person having possession of or claiming the same.

Section 3831 provides that the court shall hear proof, and, if satisfied that it would be best for said land to be sold, shall decree the sale thereof by the clerk.

The next three sections provide the terms of sale, and declare the duties of the clerk with respect to collections.

Section 3835 declares that when all the money is paid the court shall vest the title of the land in the purchaser by decree.

Section 3836 reads: "All moneys or lands so declared escheated or belonging to the State shall, if money, be paid to the treasurer of the State, who shall report the same to the next legislature thereafter; or if lands, and the court should not decree a sale of the same, the said district attorney shall, in writing, report the same to the comptroller, whose duty it shall be to report the same to the next legislature thereafter."

The next and last section provides for the right of appeal to this court.

We have several cases upon the subject of escheat in this State (*Williams* v. *Wilson*, Mart. & Y., 248; *Pinson* v. *Ivey*, 1 Yerg., 296; *Hinkle's Lessee* v. *Shadden*, 2 Swan, 46; *Puckett* v. *State*, 1 Sneed, 355; *Catham* v. *State*, 2 Head, 553; *Parchman* v. *Charlton*, 1 Cold., 380, 388; *Garretson* v. *Brien*, 3 Heisk., 534; *Baker* v. *Shy*, 9 Heisk., 91; *State* v. *Allen*, 2 Tenn. Ch., 42; *Box* v. *Lanier*, 112 Tenn., 393, 79 S. W., 1042, 64 L. R. A.,

State v. Lancaster.

458; *State* v. *Unknown Heirs,* 113 Tenn., 298, 86 S. W., 717), but it will be necessary for us to refer specially to only a few of these cases, as bearing upon the particular phase of the question presented in the present controversy.

In *Hinkle's Lessee* v. *Shadden,* supra, it is said: "By a well-established principle of the common law, of feudal origin and policy, whenever the blood of the person last seized became extinct, and the title of the tenant in fee failed, from want of heirs or other cause, the land escheated, or reverted to the original grantor; or lord of the fee, from whom it proceeded. And although feudal tenures do not exist in this country, yet it is a well-established principle of American jurisprudence that, when the title to land fails from defect of heirs, the State steps in the place of the feudal lord, by virtue of its sovereignty, as the original and ultimate proprietor of all the lands within its jurisdiction."

It was further said in that case that whenever the owner dies intestate, without leaving any inheritable blood, there is a failure of competent heirs, "and the lands vest immediately in the State by operation of law, and no inquest of office is requisite in such cases."

To the same effect is *Puckett* v. *State,* supra.

In *Williams* v. *Wilson* it was held that, where property subject to escheat was conveyed to a person who could not at that time take in law (an alien), nevertheless such person would have the right to hold, and that his conveyance would be good, until proceeded

against by the State, for the purpose of having an escheat declared, and that such conveyance would be subject to be defeated by the assertion of the right of the State, at any time it might see fit to proceed.

In *Catham* v. *State,* supra, it was held that the State must maintain in the proof the predicate on which it bases the escheat; that is, the death without issue, and the fact that there are no relations to take.

In *State* v. *Unknown Heirs,* supra, it was held that the fact that the decedent left a will was of no importance where the will directed the property to be disposed of as the law directs. It further appeared that the decedent died without issue and without any relatives capable of taking; therefore that the will directed simply what the law would direct, viz., that the State should take the property by escheat.

In *State* v. *Allen,* it appeared that there was a bill filed to have declared escheated the property of one William Downs. During the course of the investigation there was developed a paper writing purporting to be the will of the decedent, and that this instrument had been probated in common form in the county court. Speaking to this matter, the chancellor said that there could be no doubt that the sections of the Code above quoted were intended to simplify the proceedings touching escheated estates, and to give to the court of chancery jurisdiction of all suits brought in the name of the State to recover property of that character; that the object of the legislature was to confine the litigation as

State v. Lancaster.

much as possible to a single suit, and for this purpose to clothe the chancery court with plenary power to bind all parties, and to enable it to settle in one suit the rights of all claimants.  It was further said that it did not necessarily follow that the chancellor should dispose of every possible question which might arise between the State and the various claimants in the ordinary mode, nor at one hearing; that there might be an issue made up to try some hotly contested fact turning upon the credibility of witnesses, or upon a large mass of conflicting evidence, and sent to a court of law for trial, or submitted to a jury to be impaneled in the chancery court; that there might be, also, other subsidiary litigations looking to the general result; that all the act required was that the suit in the chancery court should be the common nucleus of the litigation, and that the chancellor should control it in all its details, and, finally, by decree, settle the rights of all parties.  It was further said that, even if the sections of the Code above set out did not confer upon the chancery court the right to try an issue of *devisavit vel non,* nor deprive the circuit court of its exclusive jurisdiction over such issues, there was nothing to prevent the court, if it should become necessary in the exercise of the jurisdiction conferred by the sections mentioned, from making up the issue and sending it to the circuit court for trial; that the chancery court had, under the sections of the Code referred to, general jurisdiction of the State's claim to escheated estates; and that the mere fact that one of the claimants

relied upon a forged will could not oust the jurisdiction, although it might control the mode of its exercise. The chancellor continued: "It may not be improper for me to add that if it becomes necessary, as I think it will, to make up an issue of *devisavit vel non* in this case, I am of opinion, at present, that it will be my duty to send it to the circuit court for trial, because the circuit court is by statute, sustained by the uniform current of decision, the proper court for the probate of a will in solemn form, because its machinery is more perfect for the proper trial of such an issue than the machinery of this court, and because its decision is binding on all the world."

There is a note at the end of the case to the effect that the suggestion contained in the words just quoted was adopted, and an issue of *devisavit vel non* was made up and transmitted to the circuit court for trial, and there tried; the finding being in favor of the will.

The foregoing contains the substance of the authorities in this State, so far as they have any bearing upon the present controversy.

We shall now address ourselves especially to the questions made on demurrer, and in doing so we shall consider the first and second grounds together.

Assuming for the present that there is some method by which the State could remove the apparent obstruction of a will procured from a person *non compos mentis* whose property but for the will would be escheated to the State, we proceed to inquire whether the State has

State v. Lancaster.

the right, or a standing, to question such will. This is the point raised by the first ground of demurrer.

It is insisted that a will procured from an insane person is not void, but merely voidable, and that, so long as it remains unquestioned by some one claiming under the deceased, it must stand; that the State does not claim as heir or in any other way, under the deceased, but in an independent right as sovereign, and cannot therefore raise the controversy. We are referred, by way of analogy, to the authorities which hold that contracts by persons of unsound mind are not void, but only voidable. *McDowell* v. *Morrell*, 5 Lea, 278, 286; 29 Am. & Eng. Encyc. of Law (2d Ed.), 1071. We do not however, think that the distinction referred to can be properly said to apply to wills. A will is either good or bad. If it fail to comply with the legal prerequisites that are held vital to its form, or if the supposed testator had not sufficient mental capacity to make it, or it had been procured by undue influence, it is in either event a void paper; but the result can be determined only by a court. The paper is of no legal force, until it is probated, and it will not be probated, in solemn form, at least, unless it has the essentials of form, and unless the supposed testator had testamentary capacity. When it has been probated in solemn form, no question of validity or invalidity can be thereafter raised, except upon a bill filed to set aside the judgment for fraud in. its procurement, as any other judgment may be set aside. *Keith* v. *Alger*, 114 Tenn., 1, 85 S. W., 71. And even

when it has been probated in common form only, so long as the probate stands, it is good as to all the world, and can be questioned only in the manner just stated, or on an issue of *devisavit vel non,* and title acquired under it in good faith, while so standing, cannot be disturbed, even if the probate be subsequently annulled, and the will set aside on an issue of *devisavit vel non.* *Reeves* v. *Hager,* 101 Tenn., 712, 718-722, 50 S. W., 760.

The question then comes down to this: The State insists that the title to certain property has been cast upon it, or has reverted to it, by operation of law, at the moment of the death of a named decedent. A rival claimant insists that the title was devolved upon him by the will of the deceased, subsequently probated in common form. The State admits that, if the will is a valid instrument, it constitutes an insuperable barrier to its claim for the property, but insists that the will is a void paper. Can any sound or even plausible reason be suggested why the State should not be permitted to make the question and have its rights determined? Is it possible that the law is so narrow in its field of operation, and so feeble in power, that the State's right of escheat can be defeated by the devices of one who obtains a will from an insane person? Must the court hold that it is a sufficient answer to the State's demand that it was deprived of its right by fraud? Since when has fraud attained the dignity of a legal defense? How long has it been the policy of the law to permit the estates of insane persons to become the prey of designing men, and booty

State v. Lancaster.

to the first marauder? Does it say to the designing persons: "You can attack and carry away without fear of interruption, because there are no kin to check you and the State itself is powerless to resist you?"

We do not wish to be understood as intimating that the proof in this case, when heard, will show a state of facts so dark as just intimated might be shown in some cases; but we put the controversy in the strongest light in order to illustrate the principle. We think there is no doubt that the State has the right to test the question, but how can it be done?

Counsel for the defendants, in the very able brief filed, attack the method of practice laid down in *State* v. *Allen,* supra, as manifestly improper, because, even if the right exist to make a contest, it would have to begin in the county court, under the decisions of this court, and could not be initiated by an issue sent from the chancery court directly to the circuit court. The argument is that the circuit court has no means under the law of obtaining jurisdiction of such a controversy except by certification of the will from the county court on a contest instituted there, and that the chancery court could not confer this jurisdiction upon it by merely sending down an issue. We think this is the correct view of the matter; but there could be no objection to the chancellor staying the trial of the suit brought for escheat, until the proper proceedings could be instituted in the county court, and thence carried to the circuit court, and a contest thus instituted and carried

forward in the regular way. This was the course pur-
sued in *Simmons* v. *Leonard*, 89 Tenn., 623, 15 S. W.,.
444, as appears from the first paragraph of the opinion.
of the court in that case, and seems to us a convenient
and unobjectionable practice; and the same course was:
recognized or suggested in *Bank* v. *Nelson*, 3 Head, 635,
636.

It is true no case.has arisen in this State wherein it:
was necessary to determine whether the State could:
.make a contest for the purpose of removing an obstruc--
tion to its right of escheat.

We have numerous cases upon the subject of the·
contest of wills, involving both the question of the per--
sonnel of the contestant, and the form of practice; among:
other points the settlement in the county court of the·
preliminary question of the right to contest. *Burrow* v..
*Ragland*, 6 Humph., 481; *Wynne* v. *Spiers*, 7 Humph.,.
394; *Cornwell* v. *Cornwell*, 11 Humph., 485; *Bank* v..
*Nelson*, 3 Head, 634; *Keith* v. *Raglan*, 1 Cold., 473, 477;.
*Townsend* v. *Townsend*, 4 Cold., 84, 94 Am. Dec., 185;.
*Townsend* v. *Bonner*, 1 Tenn. Cas., 198; *Miller* v. *Mil-*
*ler*, 5 Heisk., 730; *Harrison* v. *Guion*, 4 Lea, 531; *Moore*
v. *Johnson*, 7 Lea, 584; *Roberts* v. *McMillan*, 9 Lea, 573;.
*Wisener* v. *Maupin*, 2 Baxt., 349; *Gore* v. *Howard*, 94
*Tenn.*, 577, 30 S. W., 730; *Crocker* v. *Balch*, 104 Tenn.,.
6, 55 S. W., 307; *Ligon* v. *Hawkes*, 110 Tenn., 514, 520,
75 S. W., 1072; *Bowers* v. *McGavock*, 114 Tenn., 438,
85 S. W., 893; *Cowan* v. *Walker*, 117 Tenn., 135, 96 S.
W., 967. As already stated, the question of the State's

right to make a contest has never arisen.  It is insisted that the right must be given by statute, but this is a mistaken view.  The statute does not settle the question at all.  The general criterion laid down in the cases is that the person who contests must be some one who has an interest at the death of the testator, and who would obtain a benefit by the fact of intestacy.  It has been held that an heir apparent who has released his expectancy cannot contest, nor a creditor of an heir, nor a grandson of a testator, it not appearing that his father was dead, nor a son-in-law who was the father of a devisee, nor the next of kin of a devisee, nor the next of kin himself in the face of a prior valid will in which he was excluded.  In these several cases, we see the underlying principle just announced; but we are referred to *Gore* v. *Howard,* supra, wherein it is said that one who would take nothing under the statute of distributions, if there were no will, cannot contest it; and the same language is used in *Bowers* v. *McGavock,* supra, and in *Ligon* v. *Hawkes,* wherein it is said that the general rule in Tennessee is that only those will be allowed to contest the validity of a will who are directly interested as heir or distributee in the estate.  But in the cases last cited the court did not have in mind the question before us at this time, nor could it have been intended to preclude such an inquiry.  Decisions must be construed in the light of the question with which the court is dealing, and of the facts before the court.  Aside from the general underlying rule which we have deduced from

our cases, there is to be found the strongest ground in the very nature of the inquiry.

In discussing the rule that courts of equity will not entertain bills to set aside a will on the ground of fraud and imposition, it is said, by Mr. Justice Bradley, in *Re Broderick's Will,* 21 Wall (U. S.), 503, 509, 22 L. Ed., 599:

"Whatever may have been the original ground of this rule (perhaps something in the peculiar constitution of the English courts), the most satisfactory ground of its continued prevalence is that the constitution of a succession to a deceased person's estate partakes, in some degrees, of the nature of a proceeding *in rem,* in which all persons in the world who have any interest are deemed parties, and are concluded as upon *res adjudicata* by the decision of the court having jurisdiction. The public interest requires that the estates of deceased persons, being deprived of a master, and subject to all manner of claims, should at once devolve to a new and competent owership; and, consequently, that there should be some convenient jurisdiction and mode of proceeding by which this devolution may be effected with the least chance of injustice and fraud; and that the result attained should be firm and perpetual. The courts invested with this jurisdiction should have ample powers both of process and investigation, and sufficient opportunity should be given to check and revise proceedings tainted with mistake, fraud, or illegality. These objects are generally accomplished by the constitution and powers

which are given to the probate courts, and the modes
provided for reviewing their proceedings. And one of
the principal reasons assigned by the equity courts for
not entertaining bills on questions of probate is that
the probate courts themselves have all the powers and
machinery necessary to give free and adequate relief."

It would certainly be an anomaly if there were not
vested somewhere in the machinery of the courts a power
to accomplish the result indicated—that is, to question a
fraudulent will where that fraudulent act stood in the
way of the enjoyment of the right of a third party to
the same property—and since it° does not reside in
the chancery courts in general, persons who have such an
interest as above indicated must be permitted to resort
to the probate court, and there make contest.

We are referred to the cases of *State of Louisiana* v.
*Ames,* 23 La. Ann., 69, and *Hopf* v. *State,* 72 Tex., 281,
287, 10 S. W., 589, as being opposed to the conclusion
just announced. An examination of these cases, how-
ever, discovers that they are not in opposition. In
*State* v. *Ames,* it was merely decided that the State was
not entitled to notice as an heir, but the right to main-
tain the contest was in substance upheld, since the vari-
ous grounds which were advanced by the State for set-
ting aside the will were fully considered and disposed of.
These grounds were: First, that the order for the regis-
try and execution of the will was rendered *ex parte*
without notice to the State; secondly, on insufficient

evidence; and, thirdly, that the will was spurious and forged. The court held that the State was not entitled to notice of the probate, but, as stated, proceeded to dispose of the case upon the other two grounds as to the insufficiency of the evidence, and as to the validity of the instrument itself. In the Texas case there was no formal contest instituted by the State. The district attorney, it is true, appeared, during the probate proceedings, and, in the name of the State, filed a protest against the probate. The court held upon the evidence offered that the will was properly admitted to probate. As to the intervention of the State, the court intimated that no reasons were shown for such intervention, and held that an escheat could not be declared in a proceeding to probate a will.

Whether the State could institute a contest without first appearing in the court of chancery to have its right of escheat declared may well be doubted, since the sections of the Code which we have previously set out indicate that the rights of the State must be presented in chancery. But having presented its rights there, and the obstacle being stated, arising out of the existence of a will made by an insane person, we see no objection to a stay of proceedings until such a contest can be instituted and decided, and a direction on the part of the chancellor to the district attorney to institute such contest.

However, there is another view of the matter which would seem to render a contest unnecessary. This view is

based on the rule laid down in *Weatherheard* v. *Sewell*, 9 Humph., 271, 280, 281, 282, 301. That was an ejectment suit. The plaintiff claimed title under the will of Anthony Bledsoe, which had been admitted to probate in common form in Sumner county. The defendant offered evidence for the purpose of showing that the will was procured by fraud. This evidence was objected to. The court held that the evidence was competent; that prior to Acts 1784, N. C., ch. 10, section 6, which now appears in sections 3929 to 3932, inclusive, of Shannon's Code, it was customary to require the production of the original will in court under such circumstances, and to require its proof, but that the statute referred to made the probate *prima facie* evidence of the will, yet that the opposing party might introduce evidence in the case on trial, for the purpose of showing that the will was procured by fraud. Said the court:

"Now, what change has this statute wrought upon the common law in relation to this subject as it existed anterior to its passage? It has made a probate of the will in the county court sufficient testimony of the devise of real estate, and attested copies evidence in the same manner as the originals. We have seen that, previous to the statute, the original, if in existence, had to be procured, and, when produced, it had to be proven; but now an attested copy may be substituted in the place of the original, and be read upon the probate in the county court. Suppose this done. In what position do the parties then stand? In the same that they would

have stood provided the original will had been produced and proven as is required by the common law; that is, the party claiming under the will has made out his case *prima facie,* and those claiming against the will are put upon their defense to show that it is no will, or that the party producing it takes no interest under it. The only difference, then, is that an attested copy of the will, with the probate in the county court, is substituted in the place of the original will and proof in open court, *per testes.* But it was never intended that such attested copy, with the probate in the county court, should be conclusive, as is the probate of a will of personal property, *per testes,* in solemn form, in the courts having jurisdiction of such probates; that being looked upon as a proceeding *in rem.*

"The proviso to the statute was intended for the protection of those contesting the will, in order to give them the benefit of any internal evidence upon the face of the will tending to show that a fraud had been committed in the drawing or obtaining it, or that there was any irregularity in the execution or attestation thereof. Then we hold upon this point that where a will of real estate has been proven in common form, and registered in the county court, an attested copy thereof is competent proof, *prima facie,* for any person claiming an interest under it, in any suit pending at law in relation to land devised by it; that the defendant may attack the validity of such will, and the rights of those claiming under it, as well and to the same extent where

State v. Lancaster.

an attested copy is relied upon as where the original is produced and proven in common law form upon the trial; and that the person resisting the claim under the will is entitled to the production of the original if it be in existence, and he thinks it will facilitate his defense; but, before he can ask for this, he must suggest that a fraud has been committed in the drawing or obtaining the will, or that there is some irregularity in the execution or attestation thereof.

"Then the court committed no error in hearing proof on the part of the defense in this case attacking the validity of the will, and the rights of the lessor of the plaintiff under it, provided the proof be legal, the reception of which was warranted by the law of evidence." Id., 281, 282.

The rule thus announced is an exception to the general rule that the integrity of a will cannot be questioned unless a contest be first instituted in the county court, and thence carried in the regular way through the circuit court. It appears from the authority just cited that where there is a litigation over specific property, in a case brought for the purpose, and either party claims under a will probated only in common form, and the other interposes as an objection to the will that it was procured by fraud, this question may be made in the case itself.

Therefore, in the present case, in a litigation over the property involved, it appearing that the will has only been probated in common form, the chancery court has

jurisdiction as incidental to the decision of the question of the right of property to consider and dispose of the question whether the will was procured by fraud—that is, from a person who was insane and incapable of executing it—or by the exercise of undue influence on such person, and if the facts are found in favor of these contentions, then it has power to declare the will ineffective as to the particular property and persons involved, and to adjudicate the rights of the parties in all respects as pertaining to the property.

The third ground of demurrer makes the point that the bill should have been filed against the persons to whom the property had been sold, rather than against the administrator in whose hands the proceeds are found. This was an incorrect view, as fully shown in the case of *Reeves* v. *Hager*, supra.

It results that the judgment of the court below, dismissing the bill, must be reversed, and the cause remanded to the chancery court for trial upon the merits. The demurrants will pay the costs of the appeal.